**REED SMITH LLP**
Omar J. Alaniz (SBN 24040402)
Taylre C. Janak (SBN 24122751)
Haley B. Bray (SBN 24143584)
Emily A. Chang (SBN 24142773)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail:  oalaniz@reedsmith.com
         tjanak@reedsmith.com
         hbray@reedsmith.com
         echang@reedsmith.com

*Proposed Attorneys for the*
*Debtors and Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **GEV IO LLC,** *et al.,* | § § § | **Case No. 26-31546 (MVL)** |
| **Debtors.**[1] | § § § | **(Joint Administration Requested)** |
| | § § § § § | **First Day Hearing**<br>**April 15, 2026 at 10:30 a.m. CT** |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE POLICIES, (B) CONTINUE THEIR WORKERS' COMPENSATION PROGRAM, AND (C) SATISFY OBLIGATIONS RELATED THERETO; AND (II) GRANTING RELATED RELIEF

GEV IO LLC, and its debtor affiliate, as debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "**Debtors**") respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each of their federal identification numbers are Gev IO LLC (9888) and Everywhere Internet, LLC (4237). The location of the Debtors' corporate headquarters and the Debtors' service address is 30665 U.S. Hwy 281 N. Bulverde, Texas 78163.

**Background**

1.     In support of the Motion, the Debtors submit the *Declaration of Jessica Garza in Support of Chapter 11 Filings and First Day Relief* (the "**First Day Declaration**").[2]

2.     On April 8, 2026 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

3.     The Debtors provide high-speed, secure wireless internet to rural communities and on-the-road travelers nationwide. The Debtors provide remote internet coverage to customers in all 50 states.

4.     Additional information regarding the Debtors' business, capital structure and the circumstances leading to the filing of these chapter 11 Cases is set forth in the First Day Declaration

**Jurisdiction**

5.     The United States Bankruptcy Court for the Northern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The bases for the relief requested herein are Bankruptcy Code Sections 363, 364, 503(b), and 105(a), and Federal Rules of Bankruptcy 4001, 6003, and 6004.

---

[2] Capitalized terms used herein but undefined have the meaning provided in the First Day Declaration.

**Relief Requested**

8.      The Debtors seek entry of an interim order (the "**Interim Order**") and final order

(the "**Final Order**"), substantially in the form annexed hereto (the "**Proposed Orders**"), (i)

authorizing the Debtors to (a) continue the Insurance Policies (as defined below) in accordance

with their applicable terms and to perform their obligations with respect thereto during these

Chapter 11 Cases, and (b) continue the Workers' Compensation Program (as defined below), (c)

pay any obligations arising under or related to the Insurance Policies, whether incurred before or

after the Petition Date; and (ii) granting related relief. In furtherance of the foregoing, the Debtors

also seek authority to renew, amend, supplement, extend, or replace their Insurance Policies if they

determine, in their reasonable business judgment, that such action is necessary or appropriate.

**Insurance Policies**

9.      In the ordinary course of business, the Debtors maintain five (5) insurance policies

(the "**Insurance Policies**") that are underwritten by various insurance carriers (the "**Insurance**

**Carriers**"). These policies provide coverage for both general and commercial business risks,

including, but not limited to, coverage for the Debtors' real and personal property, automobile

liability, workers' compensation and employers liability, general liability, business liability, and

data breach defense and liability. The Debtors likewise maintain appropriate employment practices

liability coverage. A number of these Insurance Policies are in the name of the Debtors' co-founder

and corporate president, Jessica Garza[3] to insure certain real and personal property titled[4] in the

Debtors' name and used in the ordinary course of business by the Debtors. For the avoidance of

---

3 For the avoidance of doubt, Ms. Garza is a salaried employee of the Debtors.
4 The Debtors are aware of two (2) automobile insurance policies, Policy Nos. 3274547-SFP-53 and 4570533-C01-53A, which cover automobiles used by the Debtors' employees in the ordinary course of business as "company cars;" however, both vehicles are subject to loans in the name of Jessica Garza, the Debtors' co-founder, in her personal capacity.

doubt, all premiums for the Insurance Policies listing Jessica Garza as the insured are paid by the Debtors from their operating expenses bank account.  In addition, certain of the Insurance Policies provide layers of excess liability coverage. A schedule of the Insurance Policies is attached to the Interim Order and Final Order as **Exhibit 1**, which is incorporated herein by reference.

10.     Continuation and renewal of the Insurance Policies and entry into new Insurance Policies are essential to preserving the value of the Debtors' businesses, properties, and assets. In certain cases, coverage provided by the Insurance Policies is required by regulations, laws, and contracts that govern the Debtors' commercial activities, including the Bankruptcy Code and the *Guidelines of Chapter 11 Cases: Operating Instructions and Reporting Requirements* (the "**Operating Guidelines**") published by the Office of the United States Trustee for Region 6 (the "**U.S. Trustee**"), which require, among other things, that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.

11.     The Debtors' obligations with respect to the Insurance Policies include costs associated with Insurance Premiums and the Workers' Compensation Program (each, as defined below and, collectively, the "**Insurance Obligations**"). By this Motion, the Debtors seek authorization to maintain the existing Insurance Policies, satisfy any prepetition obligations related thereto, including the Insurance Obligations, and to renew, amend, supplement, extend, or purchase new Insurance Policies in the ordinary course of business on a post-petition basis consistent with past practice. In addition, the Debtors seek authorization to modify the Insurance Policies listing Jessica Garza as the insured, as identified by Exhibit 1, in the ordinary course of business, to update the insured party to reflect the Debtors moving forward.

### A.     **Insurance Premiums**

12.     In the ordinary course of business, the Debtors incur premium obligations in connection with their Insurance Policies that are negotiated at the time of initial purchase and

subsequent renewal (the "**Insurance Premiums**"). Insurance Premiums for the Insurance Policies are paid by monthly installments and are due on the first day of each month.

13.     In addition, certain of the Insurance Policies and the Workers' Compensation Program are subject to routine audits (the "**Audits**" and, collectively, with the Insurance Premiums, the "**Insurance Premium Obligations**"), which may result in adjustments to the Insurance Premiums owed on account thereof. Audits for Insurance Policies issued prior to the Petition Date may not conclude until after the Petition Date. Accordingly, the aggregate amount of Insurance Premiums, if any, the Debtors may owe arising from any such routine Audits is not known at this time.

14.     The annual Insurance Premium Obligations for the Insurance Policies are approximately $23,630.00 in the aggregate. As of the Petition Date, the Debtors estimate that they do not owe anything on account of the Insurance Policies.

15.     However, out of an abundance of caution, by this Motion, the Debtors seek authority, but not direction, to pay any such prepetition Insurance Premium Obligations owed in connection with the Insurance Policies as well as satisfy any Insurance Premium Obligations that come due in the post-petition period in the ordinary course.

**B.      Deductibles**

16.     Certain of the Insurance Policies require the Debtors to pay a per-claim deductible (collectively, the "**Deductibles**"). Generally, if a claim is made under an Insurance Policy with a Deductible, the Debtors are obligated to pay any defense costs and/or indemnity payments up to the amount of the Deductible, and Insurance Carriers are responsible for any amounts in excess of the Deductible, up to the limit of the applicable Insurance Policy. If a claim is made against one of the Debtors' Insurance Policies with a Deductible, the Insurance Carrier or third-party administrator typically will administer the claim and make any payments in connection therewith,

including amounts within the applicable Deductible. The Debtors then reimburse the Insurance Carrier or third-party administrator for the amount within the Deductible.

17.     As of the Petition Date, none of the Insurance Carriers have asserted Deductible claims against the Debtors. The Debtors seek authority, but not direction, to continue to honor their payment obligations with respect to Deductibles, including, out of an abundance of caution, paying any prepetition amounts, in the ordinary course of business on a post-petition basis. [5]

C.     **Workers' Compensation Program**

18.     Under the laws of the various jurisdictions in which they operate, the Debtors are required to maintain workers' compensation coverage for their employees with respect to claims arising from or related to employment with the Debtors (the "**Workers' Compensation Claims**").

19.     The Debtors' workers' compensation program covers, in accordance with applicable state laws, (i) workers' compensation, (ii) employer liability for accident and disease, and (iii) other states insurance (collectively, the "**Workers' Compensation Program**").   The coverage period for the Workers' Compensation Program is February 2, 2026, to February 2, 2027. The annual premium for the Workers' Compensation Program is approximately $506.

20.     As of the Petition Date, the Debtors are not aware of any open Workers' Compensation Claims or any outstanding obligations under the Workers' Compensation Program. As of the Petition Date, the Debtors estimate that they have no outstanding Insurance Premiums for the Workers' Compensation Program.   The Debtors seek authority, but not direction, to continue honoring any amounts that may arise under the Workers' Compensation Program in the ordinary course of business to ensure uninterrupted coverage of the Workers' Compensation Program.

---

[5] Notwithstanding the foregoing, nothing herein shall be deemed an admission to the validity of any asserted claim against the Debtors nor its estates and the Debtors reserve all rights regarding the validity of any asserted Deductible.

**Relief Requested Should Be Granted**

21.     Sufficient cause exists to authorize the Debtors to continue their Insurance Policies as set out herein and to grant related relief, including, among other things, that (i) maintaining the Insurance Policies is required by law and the Bankruptcy Code; (ii) failure to honor prepetition obligations related to the Insurance Policies may result in the Debtors incurring increased costs upon renewal; and (iii) the Court has authority to grant the requested relief under sections 363 and 105(a) of the Bankruptcy Code.

**A.     Maintaining the Insurance Policies is Required by Law, Bankruptcy Code, and Operating Guidelines**

22.     Continuance of the Insurance Policies on an ongoing and uninterrupted basis is essential for the continued operation of the Debtors' business. Such a disruption of the Debtors' insurance coverage could expose the Debtors to serious operational risks, including, but not limited to, exposure to uninsured losses that would otherwise have been covered or reimbursed under the Insurance Policies. If the Debtors fail to pay their obligations on an ongoing basis in connection with the Insurance Policies, the providers may seek to terminate them or decline to renew them in the future. The Debtors would then be required to obtain replacement Insurance Policies on an expedited basis at a significantly increased cost to their estates. Furthermore, the Debtors could be exposed to substantial liability, and such exposure could have an extremely negative impact on the Debtors' ability to successfully prosecute these Chapter 11 Cases.

23.     The Debtors could also incur substantial fines from various state workers' compensation boards if the Workers' Compensation Program is not maintained.  Further, without sufficient workers' compensation coverage, there is a significant risk that eligible workers' compensation claimants will not receive timely payments for employment-related injuries that may arise during these Chapter 11 Cases, which could also have a detrimental effect on the financial

well-being and morale of the Debtors' employees.  Departures by employees at this critical time would undoubtedly result in a severe disruption of the Debtors' business and have an adverse impact on the Debtors, the value of their assets and business, and their ability to successfully prosecute these Chapter 11 Cases.

24.     Under section 1112(b)(4)(C) of the Bankruptcy Code, a "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in certain instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' operations. Given this backdrop, it is essential to the Debtors' estates, and consistent with the Bankruptcy Code and the Operating Guidelines, that the Debtors be permitted to maintain and continue making all payments required under their Insurance Policies. It is similarly critical that the Debtors have the authority to renew, amend, supplement, extend, or replace their Insurance Policies, as needed, in their business judgment, without further order of the Court.

25.     In addition, in certain of the jurisdictions in which the Debtors operate their business the Debtors are required to maintain workers' compensation coverage in accordance with applicable law.  If the Debtors fail to maintain the Workers' Compensation Program, applicable law may prohibit the Debtors from operating in those states. Maintaining the Workers' Compensation Program and the payment of all workers' compensation claims are therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

**B.      Continuation of the Insurance Policies is Authorized by Section 363(c) of the Bankruptcy Code**

26.     The Debtors believe that payments made to maintain the Insurance Policies fall within the ordinary course of business and are therefore authorized pursuant to section 363(c)(1)

of the Bankruptcy Code. The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Off. Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).

27.     Here, maintaining the Insurance Policies and honoring certain obligations arising thereunder, including undertaking renewals or extensions as they expire, or entering into new arrangements through the Insurance Carriers, sureties, or issuers, as applicable, are the type of ordinary course transactions contemplated by section 363(c)(1). Accordingly, under section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized to continue the Insurance Policies in the ordinary course of business without the Court's approval.

**C.      Payment of Prepetition Obligations with Respect to the Insurance Policies is Authorized by Section 363(b) of the Bankruptcy Code**

28.     The Court may grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 434–35 (5th Cir. 2016) (noting that section 363 "requires that a sale of the estate's assets be supported by an articulated business justification, good business judgment, or sound business reasons") (citation omitted); *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors

9

and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (citation omitted).

29. In addition, the Court has authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see CoServ*, 273 B.R. at 491–93, 491 n.6 (holding that sections 105 and 1107 of the Bankruptcy Code provide authority for a debtor-in-possession to pay prepetition claims); *see also In re CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first 21 days of a case if doing so is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Accordingly, the Bankruptcy Code authorizes the post-petition payment of prepetition claims where, as here, such payments are critical to preserving the going-concern value of the Debtors' estates.

30. The Debtors' use of estate funds to pay obligations arising from the Insurance Policies is justified because such obligations are necessary costs of preserving the Debtors' estates. The Insurance Policies are essential to the Debtors' operations, as the Debtors would be exposed to significant liability if the Insurance Policies were allowed to lapse or terminate. Such exposure could detrimentally impact the success of these Chapter 11 Cases. In addition, failure to timely

pay outstanding premiums could expose the Debtors to potential penalties or termination of the policy.

31.     Similarly, to continue their business operations during the Chapter 11 Cases, the Debtors must also be able to provide financial assurances to their contract counterparties.

32.     For the foregoing reasons, payment of the obligations in connection with Insurance Policies is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties-in-interest in these cases. Courts in this district have permitted chapter 11 debtors to continue to maintain their insurance policies, and to pay obligations, including prepetition obligations, related thereto as a routine matter in similar cases. *See, e.g.*, *In re PrimaLend Capital Partners, LP*, No. 25090013 (MXM) (N.D. Tex. Oct. 24, 2025), Dkt. No. 75 (authorizing debtors to maintain and continue existing insurance programs and to pay prepetition obligations related thereto); *In re Higher Ground Education, Inc., et al.*, No. 25-80121-11 (MVL) (Bankr. N.D. Tex. Jun. 20, 2025) (authorizing debtors to maintain insurance and to pay all obligations related thereto); *In re Hooters of America, LLC*, No. 25-80078 (SWE) (Bankr. N.D. Tex. April 3, 2025) (same); *In re Prospect Medical Holdings, Inc., et al.*, No. 25-80002 (SGJ) (Bankr. N. D. Tex. Jan. 14, 2025), Dkt. No. 96 (same); *In re Tommy's Fort Worth, LLC*, No. 24-90000 (ELM) (Bankr. N.D. Tex. May 28, 2024), Dkt. No. 78 (same). Similar relief is also appropriate here.

33.     Accordingly, the Court should authorize the Debtors to maintain all of their Insurance Policies and to pay all obligations, including any prepetition obligations, related thereto.

**D.**     **Cause Exists to Authorize the Banks to Honor Checks and Electronic Fund Transfers**

34.     The Debtors further request that the Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the Insurance

Policies, to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payment. The Debtors also seek authority to issue new post-petition checks or effect new post-petition electronic funds transfers in replacement of any checks or fund transfer requests on account of the claims related to the Insurance Policies dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases.

### Debtors' Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

35. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). The relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### Reservation of Rights

36. Nothing contained herein is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any claims, (vi) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vii) an admission as to the validity of any liens satisfied pursuant to this Motion, or (viii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under

section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

<b><u>Notice</u></b>

37. Notice of this Motion will be served on the following parties or their counsel (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors; and (c) any party entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 13, 2026  
      Dallas, Texas

Respectfully submitted

*/s/ Omar J. Alaniz*  
**REED SMITH LLP**  
Omar J. Alaniz (SBN 24040402)  
Taylre C. Janak (SBN 24122751)  
Haley B. Bray (SBN 24143584)  
Emily A. Chang (SBN 24142773)  
2850 N. Harwood Street, Suite 1500  
Dallas, TX 75201  
Telephone: (469) 680-4200  
Facsimile: (469) 680-4299  
E-mail:  oalaniz@reedsmith.com  
        tjanak@reedsmith.com  
        hbray@reedsmith.com  
        echang@reedsmith.com

*Proposed Attorneys for the*  
*Debtors and Debtors-in-Possession*

### Certificate of Service

I hereby certify that on April 13, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas and via U.S. First Class Mail, postage prepaid, on the parties on the attached service list.

*/s/ Taylre C. Janak*
Taylre C. Janak

Label Matrix for local noticing
0539-3
Case 26-31546-mvl11
Northern District of Texas
Dallas
Mon Apr 13 21:54:06 CDT 2026

GEV IQ, LLC
1308 E. Common St, Suite 205
New Braunfels, TX 78130-3561

U.S. Attorney
1100 Commerce, 3rd Floor
Dallas, TX 75242-1074

U.S. Attorney General
Department of Justice
Washington, DC 20001

1100 Commerce Street
Room 1254
Dallas, TX 75242-1305

1101 Inseego Corp
9710 Scranton Road
Suite 200
San Diego, CA 92121-1744

AKG Electrical, LLC
5885 Allison St
Unit 157
Arvada, CO 80001-2605

Boulder Valley Real Estate
1445 Pearl St.
P.O. Box 2077
Boulder, Colorado 80306-2077

Cellco Parntership
DBA Verizon Wireless
1 Verizon Way
Basking Ridge NJ 07920-1025

ConnectUS Corporation
421 Feheley Drive
King of Prussia, PA 19406-2658

Expensify
401 SW 5th Ave
Portland, OR 97204-2205

Hubspot
25 First Street, 2nd Floor
Cambridge, MA 02141-1802

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

JARED Investment Co.,
1445 Pearl St. Suite 200
Boulder, CO 80302-5343

LoneStar Aces LLC
Email: EfrainGuerra312@gmail.com
Phone 210-701-2333
San Antonio, Texas

Meta Platforms, Inc.
1 Meta Way
Menlo Park, CA 94025-1444

Office of the Texas Attorney General
c/o Consumer Protection Division
300 West 15th Street, Austin, TX 78701

Parkview Advance LLC
600 Summer St
Stamford, CT 06901-4404

Plaid
Plaid, Inc Attn: Legal
PO Box 7775, #35278
San Francisco, CA 94120-7775

Simpl
AUS Information Systems
2055 Sugarload Circle,
Suite 550
Duluth, GA 30097-5044

State Farm County Mutual Insurance Company o
PO Box 2356
Bloomington IL 61702-2356

State Farm Mutual Automobile Insurance Compa
PO Box 2358
Bloomington IL 61702-2358

TTEC Services Corporation
100 Congress Avenue, Suite 1425
Austin, Texas 78701-2763

TTEC Services Corporation
9197 S. Peoria Street
Englewood, CO 80112-5833

Texas Attorney General
PO Box 12548
Austin, TX 78711-2548

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-0996

Verizon
500 Technology Drive
Suite 550
Weldon Spring, MO 63304-2225

Verizon Business
PO Box 489
Newark, NJ 07101-0489

Vernance
2580 Anthem Village Drive,
Suite B
Henderson, NV 89052-5503

Omar Jesus Alaniz
Reed Smith
2850 N. Harwood St.
Suite 1500
Dallas, TX 75201-2617

Taylre Janak
Reed Smith LLP
2850 N. Harwood Street
Ste 1500
Dallas, TX 75201-2617

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Services          End of Label Matrix
P.O. Box 1214                      Mailable recipients    30
Charlotte, NC 28201                Bypassed recipients     0
                                   Total                  30