**REED SMITH LLP**
Omar J. Alaniz (SBN 24040402)
Taylre C. Janak (SBN 24122751)
Haley B. Bray (SBN 24143584)
Emily A. Chang (SBN 24142773)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail:  oalaniz@reedsmith.com
　　　　 tjanak@reedsmith.com
　　　　 hbray@reedsmith.com
　　　　 echang@reedsmith.com

*Proposed Attorneys for the*
*Debtors and Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **GEV IO LLC,** *et al.,* | § § § | **Case No. 26-31546 (MVL)** |
| **Debtors.**[1] | § § § | **(Joint Administration Requested)** |
| | § § § § | **First Day Hearing** **April 15, 2026 at 10:30 a.m.** |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES, (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (III) GRANTING RELATED RELIEF

GEV IO LLC, and its debtor affiliates, as debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "**Debtors**") respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each of their federal identification numbers are Gev IO LLC (9888) and Everywhere Internet, LLC (4237). The location of the Debtors' corporate headquarters and the Debtors' service address is 30665 U.S. Hwy 281 N. Bulverde, Texas 78163.

**Background**

1.       In support of the Motion, the Debtors submit the *Declaration of Jessica Garza in Support of Chapter 11 Filings and First Day Relief* (the "**First Day Declaration**").[2]

2.       On April 8, 2026 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

3.       The Debtors provide high-speed, secure wireless internet to rural communities and on-the-road travelers nationwide. The Debtors provide remote internet coverage to customers in all 50 states.

4.       Additional information regarding the Debtors' business, capital structure and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

**Jurisdiction**

5.       The United States Bankruptcy Court for the Northern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.       Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used herein but undefined have the meaning provided in the First Day Declaration.

7. The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a) and 541(b)(1) of the Bankruptcy Code, and Rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Relief Requested

8. By this Motion, the Debtors seek entry of an interim order (the "**Interim Order**") and final order (the "**Final Order**"), substantially in the form annexed hereto (the "**Proposed Orders**"), authorizing, but not directing, the Debtors to (a) pay certain prepetition wages, salaries, other compensation, and reimbursable expenses; (b) continue to administer the employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; and (c) granting related relief.

## The Debtors' Workforce

9. As of the Petition Date, the Debtors employ a workforce of ten (10) employees (the "**Employees**"). Of these Employees, seven (6) are employed on a full-time basis and four (4) are employed on a part-time basis. Seven (7) Employees are paid on an hourly basis and three (3) Employees earn a salary. The Debtors also employ approximately 23 independent contractors. Two (2) Employees are "insiders" (as such term is defined in section 101(31) of the Bankruptcy Code)—Jessica Garza, and her husband, Jaden Garza, are the Debtors' co-founders and are both full-time, salaried Employees.

10. This workforce is the lifeblood of the Debtors' business. Their skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability and efficiency. In many instances, these individuals cannot be easily replaced, if at all, because they are distinctly familiar with the Debtors' operations, internet and technology services, and systems, and possess specialized knowledge, skills, or experience that cannot be easily replicated. Further, certain workforce personnel have relationships with vendors and

customers that are essential to the Debtors' businesses. Simply put, without the continued, uninterrupted services of their workforce, the Debtors' business operations would falter, materially impairing the administration of the Debtors' estates during these Chapter 11 Cases.

11.     At the same time, the majority of the workforce relies exclusively on their compensation and benefits to pay their daily living expenses and to support their families. These workers will be materially harmed and exposed to significant financial hardship if the Debtors are not permitted to continue paying their compensation, providing employee benefits, and maintaining certain employee programs during these Chapter 11 Cases.  This harm would be magnified by loss of the workforce which would have an immediate negative impact on the high-speed internet services provided by the Debtors to rural and remote communities across the United States. Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these Chapter 11 Cases.

<u>**Overview of the Compensation and Benefits**</u>

12.     To minimize the personal hardship the Debtors' workforce would likely suffer and potential Employee attrition that likely would follow if prepetition compensation and benefits obligations remain unpaid during these Chapter 11 Cases, the Debtors request authority, but not direction, to as they become due and in the ordinary course of business and consistent with past practice: (a) pay and honor certain prepetition claims, for, among other things, Compensation and Withholding Obligations, Payroll Processing Fees, Health and Welfare Coverage and Benefits, PTO, and any other compensation or benefit programs that have historically been administered by the Debtors, as described herein (each as defined herein, and collectively, the "<u>**Compensation and Benefits**</u>"); and (b) continue to honor obligations relating to or on account of the Compensation and Benefits on a post-petition basis, as applicable, in each case, on a case-by-case basis and in

the Debtors' discretion, as detailed herein and summarized in the chart below. In addition, the Debtors also seek to pay all costs incidental to the Compensation and Benefits.

13.     Subject to the Court's approval, the Debtors seek to continue their prepetition Compensation and Benefits in the ordinary course of business and consistent with past practice on a post-petition basis, including paying all outstanding prepetition amounts related thereto. Recognizing that certain of the Compensation and Benefits are mandated by applicable law, out of an abundance of caution, the Debtors further request confirmation of their authority to modify, change, and/or discontinue any of the Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law. For the avoidance of doubt, the Debtors do not, by this Motion, seek to pay outstanding prepetition amounts on account of the Compensation and Benefits in excess of the priority amount of $17,150.00 imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "**Priority Cap**").

14.     For the avoidance of doubt, should the Debtors seek to pay prepetition Compensation and Benefits to any Employee in excess of the Priority Cap, the Debtors shall seek such relief pursuant to a separate motion.

15.     As set forth below, the Debtors seek authority but not direction, to pay, remit, or reimburse, as applicable, to the following aggregate prepetition amounts owed on account of the Compensation and Benefits:

5

| Relief Sought | Prepetition Amount |
|---|---|
| **Compensation and Withholding Obligations** | **$16,515.30** |
| Wage Obligations | $6,982.31 |
| Independent Contractor Obligations | $7,544.00 |
| Reimbursable Expenses | $0.00 |
| Payroll Deductions | $0.00 |
| Employee Withholding Taxes | $1,379.52 |
| Employer Payroll Taxes | $609.47 |
| **Payroll Processing Fees** | **$0.00** |
| **Health and Welfare Coverage and Benefits** | **$1,064.06** |
| Medical Coverage | $0.00 |
| Dental and Vision Coverage | $1,064.06 |
| Life, AD&D, and Disability Insurance Coverage | $0.00 |
| **Paid Time Off Benefits** | **$200.00** |
| **Workers' Compensation Program** | **$0.00** |
| Total | $17,779.36 |

## I.    The Debtors' Compensation and Withholding Obligations

### A.    Wage Obligations

16.    In the ordinary course, the Debtors pay wages, salaries, overtime, and other obligations (collectively, the "**Wage Obligations**"). The Debtors conduct a Sunday – Saturday pay period and pay Employees in arrears every week on Friday. The Debtors' payroll is facilitated through a third-party payroll processor Gusto, Inc. ("**Gusto**").  Funds are wired from the Debtors' operating expenses bank account to Gusto and then disbursed by Gusto to the Employees. Since Employees are paid in arrears, the Debtors may have accrued but not yet paid Wage Obligations as of the Petition Date. Wage Obligations may also be due and owing as of the Petition Date due to, among other things, pay discrepancies that, upon reconciliation, may reveal that additional amounts are owed to certain Employees and former Employees.

17.    In the twelve (12) months prior to the Petition Date, the Debtors paid approximately $62,969.60 per month on account of Wage Obligations. As of the Petition Date, the Debtors estimate that there are $6,982.31 owed for accrued and unpaid Wage Obligations. The Debtors request authority, but not direction, to pay any such outstanding prepetition amounts incurred on

6

account of the Wage Obligations and to continue to make all payments on a post-petition basis in the ordinary course of business and consistent with their prepetition practice. For the avoidance of doubt, notwithstanding the total Wage Obligations, no individual Employee will exceed the Priority Cap.

### B.        Independent Contractor Obligations

18.        The Debtors employ approximately 23 independent contractors (the "**Independent Contractors**") mostly comprised of customer and technical support professionals who work directly with customers and on the Debtors' IT systems to ensure the Debtors are able to achieve their goal of providing reliable internet connectivity to underserved communities across America. The Independent Contractors are paid at various rates depending on their individual agreements with the Debtors (the "**Independent Contractor Obligations**"). Gusto also facilitates payroll for Independent Contractors.[3] Gusto debits funds from the Debtors' operating expenses bank account and then disburses the payments to the Independent Contractors. The Independent Contractors are critical to the Debtors' operation as they provide services and fill in operational gaps that permit the Debtors to continue operating.  In the twelve (12) months prior to the Petition Date, the Debtors paid approximately $87,884.70 per month on account of Independent Contractor Obligations. As of the Petition Date, the Debtors estimate that they owe approximately $7,544.00 in accrued and unpaid Independent Contractor Obligations.

19.        The Debtors request authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the Independent Contractor Obligations and to continue to make

---

[3]        The Debtors are aware of one (1) Independent Contractor, Ernesto Melchior, who is currently being onboarded into Gusto. In the interim, Mr. Melchior is being paid directly by the Debtors via Zelle.  The Debtors' Zelle account is connected to the Debtors' operating expenses bank account. The Debtors are working to transition Mr. Melchior's weekly payment to Gusto in accordance with the processes for payment of Independent Contractors. The Debtors request authority, but not direction, to continue to make payments to Mr. Melchior via Zelle on a post-petition basis in the ordinary course of business and consistent with their prepetition practice.

all payments on a post-petition basis in the ordinary course of business and consistent with their prepetition practice. For the avoidance of doubt, notwithstanding the total Independent Contractor Obligations, no individual Independent Contractor will exceed the Priority Cap.

### C.      Reimbursable Expenses

20.      In the ordinary course of business, the Debtors reimburse certain Employees for reasonable, necessary, and allowable business expenses incurred in accordance with the Debtors' prepetition policy and applicable law (the "**Reimbursable Expenses**"). Reimbursable Expenses are narrow and limited.  The Reimbursable Expenses the Debtors typically have to include out-of-pocket expenses associated with the performance of work-related duties and the satisfaction of work-related obligations. There are a select few Reimbursable Expenses related to certain personal operational loans taken out by the Debtors' co-founder, Jessica Garza[4] to fund the Debtors' operations during periods of liquidity shortages. The Debtors expect that Employees will continue to incur limited but necessary Reimbursable Expenses in connection with the Debtors' business operations.

21.      All Reimbursable Expenses require prior written approval by management to be eligible for reimbursement. Employees submit Reimbursable Expenses to Gusto, and such requests are routed to the appropriate party pursuant to the Debtors' reimbursement policies. Once the Debtors determine that such charges comply with the Debtors' reimbursement policies and procedures, the reimbursement is processed and typically received by the Employee on their next weekly paycheck.

22.      Employees incur the Reimbursable Expenses as business expenses in the course of performing their roles and with the understanding that such expenses will be reimbursed. Absent

---

4 For the avoidance of doubt, Ms. Garza is a salaried employee of the Debtors.

the ability to honor obligations arising from Reimbursable Expenses, the Debtors would impose undue hardship on Employees who had incurred these obligations for the Debtors' benefit. Although the Debtors require that reimbursement requests be promptly submitted, delays in submission or processing can occur, and Employees may submit reimbursement requests for, or obtain approval of, prepetition Reimbursable Expenses after the Petition Date. Without reimbursement, Employees may be held personally liable for any unpaid obligations. The Debtors' inability to reimburse such expenses would impose significant financial hardship on such individuals where the obligations were incurred for the Debtors' benefit.

23.     In the twelve (12) months before the Petition Date, the Debtors paid approximately $5,479.65 monthly on average on account of Reimbursable Expenses. As of the Petition Date, the Debtors estimate that there are no outstanding amounts owed on account of the Reimbursable Expenses; however, out of an abundance of caution, the Debtors request authority, but not direction, to satisfy any such accrued but unpaid prepetition Reimbursable Expenses and continue to pay the Reimbursable Expenses on a post-petition basis in the ordinary course of business and consistent with their prepetition practice. For the avoidance of doubt, the Debtors will not seek to pay any outstanding Reimbursable Expenses in advance of the date they come due.

### D.     Tax and Withholding Obligations

24.     In the ordinary course of business, the Debtors incur obligations on account of Payroll Deductions, Employee Withholding Taxes, and Employer Payroll Taxes (collectively, the "**Tax and Withholding Obligations**"). On average, the Debtors pay approximately $12,518.11 per month on account of the Tax and Withholding Obligations. As of the Petition Date, the Debtors estimate that they owe approximately $1,988.99 on account of the Tax and Withholding Obligations.  Tax and Withholding Obligations are pulled from the Debtors' operating expenses bank account by Gusto who then remits them to the appropriate taxing authority on the Debtors'

behalf. The Tax and Withholding Obligations are not property of the Debtors' estates; however, out of an abundance of caution, the Debtors request authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the Tax and Withholding Obligations and to continue to make all payments as they become due and payable on a post-petition basis in the ordinary course of business.

### 1. Payroll Deductions

25. During each applicable payroll period, the Debtors routinely deduct all legally required amounts from Employees' paychecks, including, without limitation (a) pre- and post-tax deductions payable pursuant to certain of the employee benefits programs, including health insurance premiums and retirement savings contributions, (b) garnishments, and (c) other withholdings as may be required in the various jurisdictions in which the Debtors operate (collectively, the "**Payroll Deductions**"), and forward the Payroll Deductions to various third-party recipients. In the twelve (12) months prior to the Petition Date, the Debtors deducted an average of approximately $6,774.12 per month on account of the Payroll Deductions. As of the Petition Date, the Debtors estimate that there are no outstanding amounts owed on account of the Payroll Deductions; however, out of an abundance of caution, the Debtors respectfully request the authority, but not direction, to pay any such outstanding prepetition amounts incurred on account of the Payroll Deductions and to continue to make all payments on a post-petition basis in the ordinary course of business and consistent with their past practice.

### 2. Employee Withholding Taxes

26. The Debtors also are required by law to withhold from Employee compensation amounts related to, among other things, federal, state, and local income taxes, Social Security, and Medicare taxes (collectively, the "**Employee Withholding Taxes**") for remittance to the appropriate federal, state, and local taxing authorities. In the twelve (12) months prior to the

Petition Date, the Debtors withheld an average of approximately $783.50 per month on account of the Employee Withholding Taxes and remitted such amount to the appropriate taxing authorities within a few days following disbursement of payroll. As of the Petition Date, the Debtors estimate that there are approximately $1,379.52 of outstanding obligations on account of Employee Withholding Taxes.

27.     The Debtors request authority, but not direction, to continue to make remittances of the Employee Withholding Taxes on behalf of the Employees in the ordinary course of business on a post-petition basis and consistent with their prepetition practice.

### 3.     Employer Payroll Taxes

28.     The Debtors are required by applicable statutory authority to match the Employee Withholding Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "**Employer Payroll Taxes**"). The Employer Payroll Taxes are processed and forwarded to the appropriate taxing authorities in accordance with remittance intervals and deadlines established by those taxing authorities. In the twelve (12) months prior to the Petition Date, the Employer Payroll Taxes averaged approximately $4,960.49 per month. As of the Petition Date, the Debtors estimate that there are approximately $609.47 outstanding obligations on account of accrued but unpaid Employer Payroll Taxes.

29.     The Debtors request authority, but not direction, to honor any prepetition Tax and Withholding Obligations and to continue to honor, process and pay the Tax and Withholding Obligations on a post-petition basis in the ordinary course and consistent with prepetition practice.

## II.     Payroll Processing Fees

30.     The Debtors utilize Gusto, a third-party human resource information systems and payroll processing software, to process the Tax and Withholding Obligations and other payroll

obligations. In connection with maintaining and operating a payroll system through Gusto, the Debtors incur certain fees (the "**Payroll Processing Fees**"). Failure to satisfy the Payroll Processing Fees in the future could lead to a delay in payroll processing and delayed disbursement of payroll taxes to the appropriate third parties to the detriment of the Employees and the Debtors' operations. Continuing to pay the Payroll Processing Fees will preserve the Debtors' ability to continue administering payroll, which is critical to the Debtors' continued operations while in chapter 11. In the twelve (12) months before the Petition Date, the Payroll Processing Fees averaged approximately $692.76 per month.

31.    As of the Petition Date, the Debtors estimate that there are no outstanding amounts owed on account of  accrued but unpaid Payroll Processing Fees; however, out of an abundance of caution,  the Debtors request authority, but not direction, to pay any outstanding prepetition Payroll Processing Fees and to continue to make all payments on a post-petition basis in the ordinary course of business and consistent with past practice.

III.    **Health and Welfare Coverage and Benefits**

32.    In the ordinary course of business, the Debtors offer certain full time Employees, in each case dependent on factors including an Employee's position within the business and his or her length of service (collectively, the "**Eligible Employees**"), the opportunity to participate in a number of insurance and benefits programs, including, among others, the Medical Plan; Dental and Vision Plan; Life, AD&D, and Disability Insurance Coverage; and Workers' Compensation (each as defined herein and collectively, the "**Health and Welfare Coverage and Benefits**"). In the twelve (12) months before the Petition Date, the Debtors paid approximately $7,500.00 per month on average on account of the Health and Welfare Coverage and Benefits.

33.    As of the Petition Date, the Debtors estimate that they owe approximately $1,064.06 on account of the Health and Welfare Coverage and Benefits. The Debtors seek

12

authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the Health and Welfare Coverage and Benefits and to continue to make all payments incurred on account of the Health and Welfare Coverage and Benefits on a post-petition basis in the ordinary course and consistent with their prepetition practice.

### A.  **Medical, Vision, and Dental Coverage**

34.   The Debtors offer their Eligible Employees the opportunity to participate in a self-insured medical plan (the "**Medical Plan**") through Blue Cross Blue Shield of Texas ("**BCBS**") as the third-party administrator. The Medical Plan provides participants and their eligible dependents (usually spouses and, under certain plans, children, at an additional cost) with coverage for, among other things, preventative care, doctor visits, hospital care, and wellness treatments.

35.   The Debtors also offer Eligible Employees and their eligible dependents the opportunity to participate in a self-insured dental and vision plan operated by Beam Insurance Services LLC ("**Beam**") as the third-party administrator (the "**Dental and Vision Plan**" and together with the Medical Plan, the "**Medical Benefits**").

36.   In the twelve (12) months prior to the Petition Date, the Debtors paid an average of approximately $6,500.01 per month on account of the Medical Benefits. As of the Petition Date, the Debtors estimate that they owe approximately $1,064.06 on account of accrued but unpaid obligations of the Medical Benefits under the Dental and Vision Plan. This amount may fluctuate, as Eligible Employees may submit prepetition claims for processing after the Petition Date. Accordingly, the Debtors request authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the Medical Benefits and pay any amounts related thereto in the ordinary course of business on a post-petition basis and consistent with their prepetition practice.

**B.** **Life, AD&D, and Disability Insurance Coverage**

37. The Debtors provide Eligible Employees with life, accidental death, and dismemberment ("**AD&D**"), and short-term disability coverage (the "**Life, AD&D, and Disability Insurance Coverage**") which is administered by The Guardian Life Insurance Company of America ("**Guardian**"). Eligible Employees are covered for the basic life and AD&D coverage, which includes up to $50,000.00 of basic life insurance coverage at no cost to the Employee.

38. The Debtors also provide Eligible Employees with short-term disability benefits through Guardian that continue such Employee's income if the Employee is unable to work because of an accident or illness. The policy pays 60% of weekly earnings up to $1,500.00 a week. Short-term disability benefits begin on the eighth day and last up to thirteen weeks. The Debtors pay the full cost of this coverage.

39. In the twelve (12) months prior to the Petition Date, the Debtors paid approximately $229.25 per month on account of the Life, AD&D, and Disability Insurance Coverage. As of the Petition Date, the Debtors estimated they owed approximately $186.51 on account of unpaid Life, AD&D, and Disability Insurance Coverage; however, subsequent to the Petition Date, on April 9, 2026, two automatic debits in the amounts of $99.68 and $86.83, respectively, were automatically debited from the Debtors' operating expenses bank account by Guardian on account of the Life, AD&D, and Disability Insurance Coverage. These debits were not the product of any voluntary, affirmative act by the Debtors post-petition but rather resulted from the operation of a pre-existing automated clearing house ("**ACH**") authorization that had been established by the Debtors in the ordinary course of business prior to the Petition Date. Because the ACH authorization remained in effect at the time the payments were processed, Guardian automatically debited the Debtors' account without any post-petition direction or initiation by the Debtors.

14

40.     The Debtors acknowledge that these post-petition transfers may constitute technical violations of the automatic stay imposed by section 362(a) of the Bankruptcy Code. Accordingly, the Debtors respectfully request that the Court authorize and ratify, *nunc pro tunc* to the date of each respective debit, the post-petition payments debited to Guardian in the aggregate amount of $186.51.

41.      Additionally, for the avoidance of doubt, the Debtors request authority, but not direction, to pay any outstanding prepetition amounts incurred on account of the Life, AD&D, and Disability Insurance Coverage and to continue to make payments on these obligations in the ordinary course of business on a post-petition basis and consistent with their prepetition practice.

## IV.     Workers' Compensation

42.     In the ordinary course of business, the Debtors maintain workers' compensation insurance for their Employees at the statutorily required level for each state in which they have Employees (the "**Workers' Compensation Program**"). The Workers' Compensation Program is provided by Technology Insurance Company, Inc., is administered by NEXT Insurance, Inc., ("**NEXT**") and is managed through Gusto. The Debtors pay approximately $506.00 per year to NEXT to maintain their Workers' Compensation Program.

43.     The Debtors must continue the claim assessment, determination, adjudication, and payment processes pursuant to the Workers' Compensation Program, and pay premiums where applicable, without regard to whether such liabilities arose before the Petition Date in order to ensure that the Debtors remain in compliance with applicable workers' compensation laws and requirements in the jurisdictions where they operate and avoid adverse legal consequences that potentially could disrupt their restructuring efforts. As of the Petition Date, the Debtors are unaware of any open claims pursuant to the Workers' Compensation Program.

44.     As of the Petition Date, the Debtors estimate that there are no outstanding amounts owed on account of accrued and unpaid premium obligations on account of the Workers' Compensation Program; however, out of an abundance of caution, the Debtors request authority to continue the Workers' Compensation Program in the ordinary course on a post-petition basis, including by making payment on any prepetition obligations owed thereunder, and to pay any such obligations as they come due in the ordinary course of business post-petition and consistent with their prepetition practice.

45.     Lastly, the Workers' Compensation Program may change post-petition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder. The Debtors request authority to continue making all payments related to the Workers' Compensation Program post-petition, including making any changes to current policy and practices that become necessary.

**V.      Paid Time Off**

46.     All regular, full time Employees are eligible for paid time off ("**PTO**") thirty (30) days after hire. PTO may be used for any purpose, including sick, vacation, and personal time when an Employee is out of office during their regular work hours, subject to the appropriate approvals. All regular-full time Employees are offered an accrued paid time off policy under which eligible Employees accrue paid time off based on their position as management or non-management Employees (the "**PTO Policy**").

47.     Non-management Employees who have completed their introductory period accrue up to eighty (80) hours of PTO per calendar year, a maximum of twenty-four (24) hours of accrued but unused PTO carry over to the following year for non-management Employees. The PTO accrues at a rate of 1.54 hours per forty (40) hours worked. Employees forfeit any earned but unused PTO to the extent that the accrued PTO exceeds eighty (80) hours. Upon termination of

16

employment, non-management Employees forfeit any earned but unused PTO unless state law provides otherwise.

48.    Management Employees who have completed their introductory period accrue up to one-hundred and twenty (120) hours of PTO per calendar year, a maximum of twenty-four (24) hours of accrued but unused PTO carry over to the following year for management Employees. The PTO accrues at a rate of 2.31 hours per forty (40) hours worked. Upon termination of employment, management Employees forfeit any earned but unused PTO unless state law provides otherwise.

49.    The Debtors believe that the continuation of the PTO Policy in accordance with prior practice is essential to maintaining Employee morale during these Chapter 11 Cases and compliance with certain state laws. The Debtors anticipate that most of their Employees will utilize the PTO Policy in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations. In addition, as of the Petition Date, the Debtors estimate they owe approximately $200.00 of accrued PTO. The Debtors request authority to pay all outstanding obligations on prepetition accrued PTO as and when they come due, and to continue to make all payments on a post-petition basis in the ordinary course of business and consistent with their prepetition practice. Finally, the Debtors request authority to allow eligible Employees to use their PTO post-petition in the ordinary course of business and consistent with past practice. For the avoidance of doubt, notwithstanding the total PTO obligations, no individual Independent Contractor or Employee will exceed the Priority Cap on account of accrued PTO.

17

**Basis for Relief**

I.  **Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits Obligations.**

A.  **Certain Compensation and Benefits Are Entitled to Priority Treatment.**

50.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Compensation and Benefits to priority treatment to the extent such payments do not exceed $17,150.00 for each individual as provided for under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B). As a result, granting the relief sought herein should only affect the timing of certain payments to the workforce and should not negatively affect recoveries for general unsecured creditors. Further, payment of the Compensation and Benefits at this time enhances value for the benefit of all interested parties. *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("The need to pay [employee wage] claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted.").

51.     The Debtors' workforce is essential to the success of these Chapter 11 Cases, and timely payment of the Compensation and Benefits at this time reduces the risk of workforce attrition and preserves and enhances the value of the Debtors' estates for the benefit of the Debtors' estates. Finding, attracting, and training new qualified and specialized talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to the workforce, as applicable.

18

**B.       Payment of Certain Compensation and Benefits Is Required by Law.**

52.       The Debtors seek authority to pay the Tax and Withholding Obligations to the appropriate third-party payees. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages. Certain Tax and Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf. *See* 11 U.S.C. § 541(b)(1), (d); *see also In re Equalnet Commc'ns*, 258 B.R. at 370 (noting that, for tax obligations where funds are held by the debtor in trust, "the legal right to payment of such claims at any time appears irrefutable.") (citing *In re Al Copeland Enters.*, 991 F.2d 233 (5th Cir. 1993)).

53.       Further, federal and state laws require the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Tax and Withholding Obligations may not be property of the Debtors' estates, the Debtors request authority to transmit the Tax and Withholding Obligations to the proper parties in the ordinary course of business. *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998) (stating "[W]hen a debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate' for purposes of the Bankruptcy Code.").

54.       Similarly, state laws of some jurisdictions in which the Debtors operate require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the

19

Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.

55.     The Debtors therefore request that the Court recognize that the Tax and Withholding Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course of business and consistent with past practice.

**II.      The Relief Sought Herein is a Sound Exercise of the Debtors' Business Judgment and is Necessary to Preserve the Value of the Debtors' Estates.**

56.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989) (recognizing a bankruptcy court's authority to pay prepetition wages). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code.

57.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* Satisfaction of prepetition claims would be a valid

exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

58. Section 363(b) of the Bankruptcy Code permits a bankruptcy court after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). In determining whether to authorize the use, sale, or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions. Courts in the Fifth Circuit have granted a debtor's request to use property of the estate even outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (citation omitted); *see also Ionosphere Clubs, Inc.*, 98 B.R. at 175–76 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

59. Courts may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies the inherent equitable powers of the bankruptcy court, empowering the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a). Accordingly, under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization"). Specifically, this Court may use its equitable powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity") when such payment is needed to facilitate the rehabilitation of the debtor. *See Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497. Moreover, the doctrine of necessity is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs*, 98 B.R. at 176.

60.     The payment of the Compensation and Benefits is warranted under this authority and the facts of these Chapter 11 Cases and represents the sound exercise of the Debtors' business judgment. The Employees and Independent Contractors are essential to the success of these Chapter 11 Cases and it is imperative that the Debtors' workforce remains fully engaged, motivated, and productive. Absent timely payment of amounts owed for Compensation and Benefits to Employees and Independent Contractors, the Debtors risk workforce attrition and resulting business disruption, which stand to materially impair estate value. Accordingly, the relief

22

requested herein is a necessary and critical element of the Debtors' efforts to maximize estate value and is necessary to avoid immediate and irreparable harm to the Debtors' estates.

61.     Continuing ordinary course benefits will help reduce the adverse effect of the commencement of these Chapter 11 Cases on the Debtors' business operations. In addition, the majority of the workforce exclusively relies on the Compensation and Benefits to satisfy their daily living expenses and consequently will be exposed to significant financial difficulties if the Debtors are not permitted to honor unpaid obligations on account of the Compensation and Benefits in the ordinary course. Furthermore, if this Court does not authorize the Debtors to honor their various obligations under the Medical Benefits described herein, Employees will not receive health coverage and, thus, may be obligated to pay certain healthcare claims that the Debtors have not satisfied. The loss of health care coverage will result in considerable anxiety for Employees (and likely attrition) at a time when the Debtors need such Employees to perform their jobs at peak efficiency.

62.     The Debtors request that this Court authorize, but not direct, the Debtors to pay and continue the Compensation and Benefits in the ordinary course of business on a final basis from the outset of these Chapter 11 Cases. The importance of a debtor's workforce to its operations has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. *See e.g., In re Prospect Medical Holdings Inc.*, Case No. 25-80002 (SGJ) (Bankr. N.D. Tex. Jan. 14, 2025) [Docket No. 98] (authorizing the debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (b) continue employee benefits programs); *In re CareMax, Inc.*, Case No. 24-80093 (MVL) (Bankr. N.D. Tex Nov. 20, 2024) [Docket No. 97] (same); *In re Tommy's Fort Worth, LLC, et al.*, Case No. 24-90000 (ELM) (Bankr. N.D. Tex. May 31, 2024) [Docket No. 97] (same); *In re Eiger*

*BioPharmaceuticals, Inc.*, Case No. 24-80040 (SGJ) (Bankr. N.D. Tex. April 5, 2024) [Docket No. 86].

**III.     Nunc Pro Tunc Relief as it Applies to the Inadvertent Post-Petition Payment of Certain Life, AD&D, and Disability Insurance Coverage Obligations to Guardian is Appropriate in this Case**

63.     Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

64.     Section 362(d) of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1). Such relief is appropriate and in the best interest of the estates because the payments were automatically debited in satisfaction of obligations necessary to maintain the Life, AD&D, and Disability Insurance Coverage that is essential to the welfare of the Debtors' Employees, the amounts at issue are de minimis in the context of these Chapter 11 Cases, no creditor will be prejudiced by the ratification of these payments, and the automatic nature of the debits demonstrates the absence of any willful violation of the automatic stay. *See* 11 U.S.C. §§ 105(a). The Debtors therefore request that the Court authorize and ratify, *nunc pro tunc* to the date of each respective debit, the post-petition payments to Guardian in the aggregate amount of $186.51 on account of the Debtors' outstanding prepetition obligations under the Life, AD&D, and Disability Insurance Coverage.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

65.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations

and anticipated access to debtor-in-possession financing and the consensual use of cash collateral. Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests that are unrelated to authorized payments will be honored inadvertently. The Debtors request that the Court authorize all applicable financial institutions, upon request of the Debtors, to receive, process, honor, and pay any and all checks, direct debit, wire transfer, ACH, or other payment requests in respect of the relief requested herein.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

66.    The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

67.    Nothing contained herein is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (iv) a waiver of the obligation of any party in interest to file a proof of claim, (v) an agreement or obligation to pay any claims, (vi) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vii) an admission as to the validity of any liens satisfied pursuant to this Motion, or (viii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to

25

the validity of any claim or a waiver of the Debtors or any other party in interest's rights to dispute such claim subsequently.

### Notice

68.     Notice of this Motion will be served on the following parties or their counsel (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors; and (c) any party entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 13, 2026          Respectfully submitted
         Dallas, Texas

*/s/ Omar J. Alaniz*
**REED SMITH LLP**
Omar J. Alaniz (SBN 24040402)
Taylre C. Janak (SBN 24122751)
Haley B. Bray (SBN 24143584)
Emily A. Chang (SBN 24142773)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail:  oalaniz@reedsmith.com
          tjanak@reedsmith.com
          hbray@reedsmith.com
          echang@reedsmith.com

*Proposed Attorneys for the*
*Debtors and Debtors-in-Possession*

### Certificate of Service

I hereby certify that on April 13, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas and via U.S. First Class Mail, postage prepaid, on the parties on the attached service list.

_/s/ Taylre C. Janak_
Taylre C. Janak

Label Matrix for local noticing
0539-3
Case 26-31546-mvl11
Northern District of Texas
Dallas
Mon Apr 13 21:54:06 CDT 2026

GEV IQ, LLC
1308 E. Common St, Suite 205
New Braunfels, TX 78130-3561

U.S. Attorney
1100 Commerce, 3rd Floor
Dallas, TX 75242-1074

U.S. Attorney General
Department of Justice
Washington, DC 20001

1100 Commerce Street
Room 1254
Dallas, TX 75242-1305

1101 Inseego Corp
9710 Scranton Road
Suite 200
San Diego, CA 92121-1744

AKG Electrical, LLC
5885 Allison St
Unit 157
Arvada, CO 80001-2605

Boulder Valley Real Estate
1445 Pearl St.
P.O. Box 2077
Boulder, Colorado 80306-2077

Cellco Parntership
DBA Verizon Wireless
1 Verizon Way
Basking Ridge NJ 07920-1025

ConnectUS Corporation
421 Feheley Drive
King of Prussia, PA 19406-2658

Expensify
401 SW 5th Ave
Portland, OR 97204-2205

Hubspot
25 First Street, 2nd Floor
Cambridge, MA 02141-1802

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

JARED Investment Co.,
1445 Pearl St. Suite 200
Boulder, CO 80302-5343

LoneStar Aces LLC
Email: EfrainGuerra312@gmail.com
Phone 210-701-2333
San Antonio, Texas

Meta Platforms, Inc.
1 Meta Way
Menlo Park, CA 94025-1444

Office of the Texas Attorney General
c/o Consumer Protection Division
300 West 15th Street, Austin, TX 78701

Parkview Advance LLC
600 Summer St
Stamford, CT 06901-4404

Plaid
Plaid, Inc Attn: Legal
PO Box 7775, #35278
San Francisco, CA 94120-7775

Simpl
AUS Information Systems
2055 Sugarload Circle,
Suite 550
Duluth, GA 30097-5044

State Farm County Mutual Insurance Company o
PO Box 2356
Bloomington IL 61702-2356

State Farm Mutual Automobile Insurance Compa
PO Box 2358
Bloomington IL 61702-2358

TTEC Services Corporation
100 Congress Avenue, Suite 1425
Austin, Texas 78701-2763

TTEC Services Corporation
9197 S. Peoria Street
Englewood, CO 80112-5833

Texas Attorney General
PO Box 12548
Austin, TX 78711-2548

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-0996

Verizon
500 Technology Drive
Suite 550
Weldon Spring, MO 63304-2225

Verizon Business
PO Box 489
Newark, NJ 07101-0489

Vernance
2580 Anthem Village Drive,
Suite B
Henderson, NV 89052-5503

Omar Jesus Alaniz
Reed Smith
2850 N. Harwood St.
Suite 1500
Dallas, TX 75201-2617

Taylre Janak
Reed Smith LLP
2850 N. Harwood Street
Ste 1500
Dallas, TX 75201-2617

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Services
P.O. Box 1214
Charlotte, NC 28201

End of Label Matrix
Mailable recipients    30
Bypassed recipients     0
Total                  30