**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **GEV IO LLC,** *et al.,* | § § | **Case No. 26-31546** |
| **Debtors.**[1] | § § § | **(Joint Administration Requested)** |
| | § § § § § § | |

**DECLARATION OF JESSICA GARZA IN**
**SUPPORT OF CHAPTER 11 FILINGS AND FIRST DAY RELIEF**

I, Jessica Garza, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct.

1.      I am the President and Co-Founder of lead debtor GEV IO LLC *d/b/a* Nomad Internet, a limited liability company organized under the laws of the State of Texas ("**Nomad**" and together with the remaining above-captioned debtors and debtors in possession, the "**Debtors**").  I founded Nomad alongside my husband in 2017 with a mission to serve the underserved and bring people in rural communities and RV parks reliable access to the internet.  Nomad provides high-speed internet coverage to customers in all 50 states.   In my capacity as President of Nomad, I am familiar with the Debtors' day-to-day operations, books and records, business and financial affairs and the circumstances leading to the commencement of these chapter 11 cases.

2.      Except as otherwise indicated, the facts in this declaration (this "**Declaration**") are based upon  my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, my opinion based upon experience, knowledge

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each of their federal identification numbers are Gev IO LLC d/b/a Nomad Internet (9888) and Everywhere Internet, LLC (4237). The location of the Debtors' corporate headquarters and the Debtors' service address is 30665 U.S. Hwy 281 N. Bulverde, Texas 78163.

and information concerning the Debtors' operations and financial condition, and my discussions with the Debtors' other advisors and professionals. I am over the age of 18 and I am authorized to submit this Declaration on the Debtors' behalf. If called to testify, I would testify competently to the facts set forth in this Declaration.

3.      On April 8, 2026 (the "**Petition Date**") each of the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Northern District of Texas (the "**Court**").  The Debtors filed various motions and pleadings seeking certain "first day" relief (collectively, the "**First Day Motions**") to minimize the disruption to the Debtors' businesses caused by the entrance into chapter 11. I submit this Declaration to assist the Court and parties in interest in understanding the circumstances leading to these chapter 11 cases and in support of the Debtors' chapter 11 petitions and the First Day Motions.

4.      This Declaration is organized into four (4) sections:

a.   Section I provides an overview of the Debtors' history and business operations;

b.   Section II summarizes the Debtors' corporate structure and financial condition;

c.   Section III summarizes the circumstances leading to the commencement of the chapter 11 cases; and

d.   Section IV provides a summary of the First Day Motions filed in these Chapter 11 Cases.

### THE DEBTORS' HISTORY AND BUSINESS OPERATIONS

5.      The Debtors are the owner/operators of Nomad Internet.  When my husband and I formed Nomad, we were on a mission to bring internet access to people who did not have access to internet.  We built Nomad from the group up, personally installing WiFi systems at RV Parks, resorts, and campgrounds because we saw how essential internet access had become for everyday life. Since launching in 2017, Nomad has fulfilled its mission of providing internet access to those

in rural areas and RV Parks.   These communities, particularly those in rural areas, have historically lacked access to basic utilities, both public and private, and we made it our goal to bring internet access to these vulnerable groups.   When demand exploded during the COVID-19 pandemic, Nomad expanded to bring internet to customers in all 50 states.   As the need grew, we partnered with Verizon Wireless ("**Verizon**") to expand our reach and provide nationwide service to those who needed a dependable connection while traveling.   From the beginning, our purpose has been simple: to serve people who were being overlooked and to ensure those individuals had access to the connectivity necessary to live, work and care for their families.

### A. **The Debtors' Operations**

6.      The Debtors are affiliates that operate in conjunction with each other to manage and operate Nomad.   GEV IO, LLC is the primary operating entity that operates Nomad. Everywhere Internet, LLC exists to hold the Verizon Internet contract.   Everywhere Internet, LLC does not have any ongoing business operations.

### **THE DEBTORS' PREPETITION CORPORATE AND CAPITAL STRUCTURE**

7.      The Debtors are each 100% owned by myself.   I am the single member of each limited liability company. The Debtors do not have any traditional prepetition secured lender.   The Debtors' do utilize factoring financing from Parkview Advance, LLC ("**Parkview Advance**") pursuant to a Standard Merchant Cash Advance Agreement. As of the Petition Date, the Debtors owe approximately $1,100,000 to Parkview Advance.   Parkview Advance has an alleged security interest. The Debtors have no other funded debt.

8.      The Debtors do have a number of prepetition judgment creditors that have affected the Debtors' financial wherewithal.   First, the Debtors owe the Internal Revenue Service (the "**IRS**") approximately $7,500,000. Prior to the Petition Date, the Debtors' paid the IRS

approximately $10,000 a week as part of a payment arrangement to address this debt. As of the

Petition Date, the Debtors are continuing to evaluate their cash position to determine whether

weekly payments are financially feasible.

9.      Second, the Texas Attorney General's Office (the "**Texas AG**") has a $5,000,000

judgment against the Debtors' and other individuals stemming from a settlement between the

Debtors and the Texas AG relating to purported violations of the Texas Deceptive Trade Practices-

Consumer Protection Act.  As stated in the Texas AG Agreed Judgment, the Debtors deny the

allegations in the Texas AG's First Amended Petition and the Agreed Judgment does not constitute

an admission by the Debtors' of any violation of law or regulation.  The Debtors' do not have the

financial ability to pay the Agreed Judgment in full.  The Debtors' acknowledge the Agreed

Judgment and intend to work with the Texas AG to address any issues affecting the Agreed

Judgment that stem from the filing of the bankruptcy.

## CIRCUMSTANCES LEADING TO CHAPTER 11 CASES

10.     Nomad was forced to seek chapter 11 relief after reaching an impasse with Verizon. Prior to the bankruptcy filing, Nomad alleged billing and operational issues by Verizon under the Wireless Connectivity Agreement between Everywhere Internet and Verizon. Verizon asserted that Everywhere Internet had a valid outstanding balance for unpaid wireless services pursuant to the Wireless Connectivity Agreement. The parties continue to disagree as to the amount owed to Verizon.  March 2, 2026, Nomad was notified by Verizon that it intended to suspend internet service as of April 9, 2026. As a result of the suspension notice, Nomad was forced to seek chapter 11 relief. Nomad intends to continue the contractual relationship with Verizon and anticipates renegotiating the Wireless Connectivity Agreement as part of the bankruptcy process.

11.     The Debtors' filed this Chapter 11 Case to stabilize their business and address the challenges with the IRS, Texas AG, and Verizon and to preserve operations for all of their stakeholders.  Due to pressure of managing multiple creditor obligations, the Debtors were forced to stop making weekly payments to the IRS prior to the Petition Date.  The Debtors anticipate filing a plan of reorganization aimed at stabilizing their business, addressing their obligations with the Texas AG, the IRS and their other unsecured creditors, controlling costs, and preserving the Debtors' going concern value for the benefit of all creditors.

## SUMMARY OF FIRST DAY MOTIONS

12.     Contemporaneously herewith, the Debtors filed several First Day Motions to facilitate a smooth transition into the Chapter 11 Cases and minimize the disruption to the Debtors' operations.  The First Day Motions are necessary and essential to ensuring that the Debtors' immediate needs are met and that the Debtors' and its stakeholders will not suffer any immediate and irreparable harm as a result of the commencement of this Chapter 11 Case.

13.     I have reviewed each of the First Day Motions and after consulting with the Debtors' advisors I am familiar with the contents of each First Day Motion and the relief sought therein.  My opinion as to the necessity of the First Day Motions is based upon my firsthand experience operating the Debtors on a daily basis and my review of various materials and information provided to me by the Debtors' other employees as well as discussions had in connection with the Debtors' other employees. To the best of my knowledge and belief, the factual statements contained in each First Day Motion are true and accurate and such statements are incorporated herein by reference.

14.     **Motion for Joint Administration**: The Debtors are seeking routine relief for entry of an order directing consolidation of these chapter 11 cases for procedural purposes only. Joint administration of the Debtors' chapter 11 cases will save the Debtors and their estates substantial time and expense by removing the need to prepare, replicate, file, and serve duplicative notices, applications, and orders. Further, joint administration would relieve the Court of entering duplicative orders and maintaining duplicative files and dockets.

15.     **Motion to Extend the Deadline for Filing the Debtors' Schedules and SOFAs**: The Debtors are seeking routine relief to extend the deadline by which they must file their financial schedules and statements of financial affairs. The transition into chapter 11 is a critical time for the Debtors' operations. Extending the deadline by which the Debtors must file their schedules and statements of financial affairs and providing the Debtors with additional time to focus on stabilizing their businesses is in the best interest of all parties.

16.     **Motion to Maintain the Debtors' Cash Management and Bank Accounts**: The Debtors' cash management system is complex and necessary given the Debtors' corporate structure and operations.  The Debtors maintain their bank accounts primarily at approved financial

institutions and will be creating new accounts for any postpetition financing facility. Permitting the Debtors to maintain their current cash management system in lieu of modifying their entire operation will permit the Debtors to focus on stabilizing their businesses during the transition to chapter 11 and ensuring that critical payments to employees and vendors are still made and no disruption to their customer's internet access occurs.

17.      **Motion for Payment of Employee Wages**: The Debtors' employees are critical to their operations and ensuring that the critical services provided by the Debtors to their community continue. The Debtors are seeking authorization to pay their employees, including management, customer-facing support personnel, and the myriad of other positions necessary to keep Nomad functioning. Paying these employees and ensuring they remain with the Debtors through the chapter 11 process is in the best interest of all parties and will ensure that the Debtors continue to provide a high level of support to their customers.

18.      **Motion for Authorization to Pay the Debtors' Insurance Obligations**: The Debtors maintain several customary forms of insurance including, liability insurance, business insurance, data breach insurance, worker's compensation insurance, and automobile insurance. The Debtors must maintain these various forms of insurance in the ordinary course to ensure that they are able to continue operating, remain compliant with applicable local, state and federal requirements.

**CONCLUSION**

19.      The above describes the Debtors' businesses and capital structure, the factors that precipitated the commencement of these chapter 11 cases, and the critical need for the Debtors to commence these chapter 11 cases. The Debtors' ultimate goal in these chapter 11 cases is to

- 8 -

stabilize their operations to ensure continued service to their customers and to effectuate a restructuring process to maximize value for stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing it true and correct.

Dated: April 13, 2026

<i>/s/ Jessica Garza</i>
Jessica Garza
President