**REED SMITH LLP**
Omar J. Alaniz (SBN 24040402)
Taylre C. Janak (SBN 24122751)
Haley B. Bray (SBN 24143584)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail:  oalaniz@reedsmith.com
          tjanak@reedsmith.com
          hbray@reedsmith.com


*Proposed Attorneys for the*
*Debtors and Debtors-in-Possession*

**REED SMITH LLP**
Amalia Sax-Bolder (*admitted pro hac vice*)
1400 Wewatta St
Suite 350
Denver, CO 80202
Telephone: (303) 552-3800
Facsimile: (303) 552-3799
E-mail:  asaxbolder@reedsmith.com

*Proposed Attorney for the*
*Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **GEV IO LLC,** *et al.,* | § § | **Case No. 26-31546 (MVL)** |
| **Debtors.**[1] | § § | **(Jointly Administered)** |
|  | § § § § |  |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
RETENTION AND EMPLOYMENT OF HMP ADVISORY HOLDINGS, LLC, DBA
HARNEY PARTNERS, AS FINANCIAL ADVISORS TO THE DEBTORS**

GEV IO LLC, and its debtor affiliate, as debtors and debtors in possession (collectively,

the "**Debtors**"), respectfully represent as follows in support of the *Debtors' Application to Retain*

*and Employ HMP Advisory Holdings, LLC, dba Harney Partners, as Financial Advisor for the*

*Debtors* (the "**Application**"):

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each of their federal identification numbers are
GEV IO LLC (9888) and Everywhere Internet, LLC (4237). The location of the Debtors' corporate headquarters and
the Debtors' service address is 30665 U.S. Hwy 281 N. Bulverde, Texas 78163.

1

**BACKGROUND**

1.      On April 8, 2026 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

2.      Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Local Rules**"), the Court authorized the joint administration of the Chapter 11 Cases by entry of an order on April 15, 2026 [Dkt. No. 20].

3.      The Debtors provide high-speed, secure wireless internet to rural communities and on-the-road travelers nationwide. The Debtors provide remote internet coverage to customers in all 50 states.

4.      A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Jessica Garza in Support of Chapter 11 Filings and First Day Relief* (the "**First Day Declaration**") filed with the Court on April 13, 2026 [Dkt. No. 15].

**JURISDICTION**

5.      The United States Bankruptcy Court for the Northern District of Texas (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      The Debtors confirm their consent to entry of a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The basis for the relief requested herein is section 327 of the Bankruptcy Code.

## **RELIEF REQUESTED**

9.      By this Application, pursuant to sections 327, 328(a), 330(a), and 504 of the Bankruptcy Code, Rules 2014(a) and 2016(b) of the Bankruptcy Rules, and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules, the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (a) authorizing the Debtors to employ and retain HMP Advisory Holdings, LLC, dba Harney Partners ("**HP**") as their financial advisor in accordance with the terms and conditions of the Proposed Order and that certain engagement letter dated as of April 6, 2026 (the "**Engagement Letter**")[2] a copy of which is attached to the Proposed Order as **Exhibit B**, (b) approving the terms of HP's employment and retention including the fee and expense structure and the indemnification provisions set forth in the Engagement Letter, (c) approving the engagement of HP as of the Petition Date, (d) waiving certain informational requirements, and (e) granting related relief.

10.     In support of the Application, the Debtors submit the declaration of Erik White a Managing Director of HP (the "**White Declaration**"), which is attached hereto as **Exhibit C** and incorporated herein by reference.

---

[2] Capitalized terms used herein but undefined have the meaning provided in the Engagement Letter.

## HP'S QUALIFICATIONS

11.     The Debtors seek to retain HP as their financial advisor because, among other things, HP has a strong reputation and a wealth of experience providing financial advisory and turnaround management services to debtors and creditors in financial restructuring and bankruptcy proceedings similar to this chapter 11 case.

12.     In connection with the performance of its duties and obligations as debtor-in-possession, the Debtors desire to employ HP because HP is a multi-disciplined financial advisory firm with leading practices in the areas of bankruptcy and financial restructuring.  HP has extensive experience and knowledge in the fields of financial restructuring and turnaround services and has assisted numerous troubled companies and creditors both in workout situations and in bankruptcy proceedings.  HP and its personnel are frequently engaged as estate professionals, including as chief restructuring officer, responsible party, chapter 11 trustee, chapter 11 post-confirmation trustee, financial advisor, and court-appointed receiver.

13.     HP's resources, experience, and capable professionals are critical to ensuring the Debtors' successful restructuring, satisfy a critical need of the Debtors, and complement and enhance the services being provided by the Debtors' other retained professionals.

14.     HP has extensive experience representing official creditors' committees, debtors, creditors, trustees, and others in a wide variety of bankruptcy cases, including as CRO and financial advisor. *In re White Rock Medical Center, LLC* (Bankr. S.D. Tex. Case No. 26-90115-ARP); *In re Platinum Heights, LP* (Bankr. S.D. Tex. Case No. 25-90012-ARP); *In re Hilltop SPV, LLC*, (Bankr W.D. Tex. Case No. 24-60308-MMP), *In re Cottonwood Financial Ltd*, (Bankr N.D. Tex. Case No. 24-80035-SWE), *In re Catarina Construction LLC*, (Bankr. W.D. Tex. Case No. 16-11209-HCM); *In re Richard Mark Phillips*, (Bankr. W.D. Tex. Case No. 17-10068-TMD); *In re*

*Mary Brenna Rylee*, (Bankr. W.D. Tex. Case No. 21-10436-TMD); *In re Bentoli Inc.* (Bankr. W.D. Tex. Case No. 23-*10827*-smr); *In re Flix Brewhouse NM LLC* (Bankr. W.D. Tex. Case No. 21-30676-HCM); and *In re 6 to 9 Dental Texas PLLC*, (Bankr. W.D. Tex. Case No. 23-51139-CAG).

15.     Since its retention, HP has familiarized itself with the Debtors and their business, as well as the Debtors' financial affairs, debt structure, operational needs and related matters.  HP has worked closely with the Debtors' management and counsel and has familiarity with the other major stakeholders that are or will be involved in this chapter 11 case.  For these reasons, the Debtors believe that HP has developed relevant experience and expertise regarding the Debtors that makes HP the best selection as the Debtors' financial advisor.

### SERVICES TO BE PROVIDED TO THE DEBTORS

16.     The Engagement Letter governs the relationship between the Debtors and HP.  The terms and conditions of the Engagement Letter were negotiated at arm's length and in good faith between the Debtors and HP, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Under the Engagement Letter in consideration for the compensation contemplated thereby, HP has provided and will provide the Debtors with the following financial advisory services:[3]

   a.  Assist the Debtors and their counsel with general matters related to a restructuring and contemplated chapter 11 proceeding, including but not limited to case strategy development, data gathering, and financial analysis, as needed;

   b.  Assist the Debtors with bankruptcy required reporting, including Monthly Operating Reports (MOR);

---

[3] The summaries provided in this Application are provided for convenience only.  In the event of any inconsistency between any summary and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter control. Capitalized terms used but not otherwise defined in the summaries of the Engagement Letter contained herein shall have the meanings ascribed to such terms in the Engagement Letter. In the event of any inconsistency between any summary and the terms and provisions of the Proposed Order, the terms of the Proposed Order shall control.

c.  Assist the Debtors and their counsel, as requested, to complete Initial Debtor Interview questionnaire and related information, complete and file the required Schedules of Assets and Liabilities and Statement of Financial Affairs and prepare for § 341 Meeting of Creditors;

d.  Assist the Debtors and their counsel to obtain debtor-in-possession financing, if needed;

e.  Assist the Debtors to develop and maintain thirteen-week cash forecasts and any budget-to-actual reporting or other reporting as may be required by potential debtor-in-possession financing;

f.  Support the development of the Plan of Reorganization, including financial projections liquidation analysis, claims analysis and reconciliation, and other analysis, as needed; and

g.  Other services as may be agreed upon between HP and the Debtors.

17.     The Debtors determined that HP's services are necessary to assist with complying with their obligations under the Bankruptcy Code and the requirements of the Office of the United States Trustee and to maximize the value of the Debtors' estates for the benefit of unsecured creditors.  Further, HP is well-qualified and able to represent the Debtors in a cost-effective, efficient, and timely manner.

18.     Debtors believe that the employment of HP to provide the services described above and such other services as may be necessary for the Debtors to satisfy their obligations are in the best interests of the Debtors' estates and their unsecured creditors.

**HP'S  COMPENSATION**

19.     In consideration of the services to be provided by HP as financial advisor, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to compensate HP for its services based on (i) hours spent by HP professionals at the following hourly rate and (ii) through the delivery to HP of a one-time, non-evergreen retainer in

the amount of $40,000.00, from its available cash, consistent with other orders of the Court, including any orders authorizing use of cash collateral:

| Professional Level | Per Hour (USD) |
|---|---|
| President/EVP/COO | $700 – $900 |
| Managing Director | $550 – $750 |
| Sr. Manager/Director | $450 – $600 |
| Manager | $350 – $500 |
| Sr. Consultant | $300 – $400 |
| Support Staff | $180 – $300 |

20.     The Debtors and HP anticipate that the services provided to the Debtors will be provided primarily by Managing Director Erik White, whose hourly rate is $650.[4] Hourly rates within each range set forth above are determined based on the experience and seniority of the individual professional performing the services.

21.     Given the emergency nature of the Debtors' bankruptcy filing, HP agreed to provide financial advisory services to the Debtors conditioned upon the receipt of the retainer. The Debtors believe that providing HP with its requested retainer was reasonable and appropriate for a case of this size and given the emergency nature of the Debtors' need for a financial advisor.

22.     The Debtors believe that the Fee Structure is comparable to fees generally charged by financial advisors and investment bankers of similar size and capabilities of HP in the provision of financial advisory services, both in and out of bankruptcy proceedings. The Fee Structure is consistent with HP's typical billing practices for comparably sized cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided to the Debtors. In light of the foregoing, the Debtors believe that the Fee Structure is fair, reasonable and in line with

---

[4] Notwithstanding the foregoing, additional resources and staffing may be needed and HP shall supplement the service providers to the Debtors as necessary.

market standards, and therefore in accordance with the standards set forth in section 328(a) of the Bankruptcy Code.

### RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

23.     HP will maintain time records in one-tenth hour (0.10) increments setting forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

24.     HP will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  HP applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Letter and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures established by the Court.

### HP'S DISINTERESTEDNESS

25.     To the best of the Debtors' knowledge and belief, and except to the extent disclosed herein and in the White Declaration, HP: (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (ii) does not hold or represent any interest materially adverse to the Debtors or their estates.

26.      Prior to the filing of this Application, HP conducted a disclosure review with respect to the Debtors and significant parties-in-interest ("**Interested Parties**") in the Chapter 11 Cases based on information provided by the Debtors. A list of all the categories of Interested Parties that were searched by HP is attached to the White Declaration as **Schedule 1**. As set forth in further detail in the White Declaration, HP has certain connections with creditors and other parties in interest in this chapter 11 case, including a connection with the Texas Attorney General

8

because Gregory Milligan, a partner and Executive Vice President of Harney Partners, is married to Layla Milligan, an Assistant Attorney General with the Office of the Texas Attorney General, and Managing Attorney of the Bankruptcy Regulatory Team in the Bankruptcy and Collections Division. In addition, HP serves as financial advisor to debtors in other, unrelated cases in which Reed Smith also serves as counsel to those debtors.

27.     The Debtors and HP do not believe that any of these connections constitute an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in this chapter 11 case. Specifically, with respect to the Texas Attorney General connection, Gregory Milligan will not provide services on this engagement or in connection with any matters involving the Texas Attorney General. Accordingly, the Milligan connection does not create an interest adverse to the Debtors' estates and does not impair HP's disinterestedness under section 101(14) of the Bankruptcy Code.

28.     To the extent HP discovers any material facts bearing on the matters described herein during the period of HP's retention, HP will amend and supplement the information contained in this Application and the White Declaration to disclose such facts.

29.     The Debtors delivered $40,000.00 on April 6, 2026 as an advance against services to be provided by HP in connection with these chapter 11 cases. HP incurred $2,145.00 in fees and expenses prior to the Petition Date. The firm is holding $37,855.00 as a retainer in its trust account.

30.     The Debtors seek approval of HP's retention effective as of the Petition Date.

31.     As set forth in the White Declaration; HP has not shared or agreed to share any of their compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.  If any such agreement is entered into, HP will amend and supplement

the information contained in this Application and the White Declaration to disclose the terms of any such agreement.

32.     No promises have been received by HP, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

## INDEMNIFICATION

33.     The Engagement Letter provides that the Debtors shall indemnify HP, its employees, and hold those parties harmless against any and all claims, liabilities, losses, damages and expenses as incurred, related to or arising out of or in connection to HP's engagement with the Debtors as set forth in the Engagement Letter unless such losses, claims, damages, liabilities or expenses are finally judicially determined that they are primarily due to such HP Party's gross negligence or willful misconduct.

34.     The Debtors and HP believe that the indemnification provisions of the Engagement Letter are customary and reasonable for a financial advisory firm such as HP, and are appropriate and customary in this jurisdiction.    The terms of the Engagement Letter, including the indemnification provisions, were negotiated by the Debtors and HP at arm's length and in good faith.  The Debtors submit that such provisions, viewed in conjunction with the other terms of HP's proposed retention, are reasonable and in the best interests of the Debtors, their estate and creditors in light of the fact that the Debtors require HP's services in these chapter 11 cases.

## BASIS FOR RELIEF

35.     The Debtors seek authority to employ and retain HP as their financial advisor under section 327 of the Bankruptcy Code, which authorizes a debtor to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons,

to represent or assist the debtor in carrying out the debtors' duties under this title." 11 U.S.C. § 327(a).

36. In addition, the Debtors seek approval of the Engagement Letter (including the Fee Structure and the indemnification, contribution, reimbursement and other related provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and chief restructuring officers on terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*), 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *see also Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).

37. The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by HP, (ii) HP's substantial experience with respect to financial advisory services,

and (iii) the hourly Fee Structure typically utilized by HP and other financial advisors in cases of this size and complexity. Accordingly, the Debtors believe that HP's retention on the terms and conditions proposed herein is appropriate.

**WAIVER OF BANKRUPTCY RULES 6004(a) and 6004(h)**

38. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h). Cause exists for such waiver because the Debtors require HP's services to continue without interruption during the critical early stages of the Chapter 11 Cases, and any delay in HP's retention would prejudice the Debtors' ability to comply with their obligations under the Bankruptcy Code and to preserve estate value.

**NOTICE**

39. Notice of this Application will be served on the following parties or their counsel (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors; and (c) any party entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

WHEREFORE, the Debtors request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances

Dated: May 8, 2026
Dallas, Texas

**GEV IO LLC. ET AL.**
(as Debtors and Debtors in Possession)

*/s/ Jessica Garza*
Name: Jessica Garza
Title: Corporate President

**<u>Certificate of Service</u>**

I hereby certify that on May 8, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas and will be served as set forth in the Affidavit of Service to be filed by the Debtors.

*/s/ Omar J. Alaniz*
Omar J. Alaniz