# EXHIBIT B

---

**PERSONAL & CONFIDENTIAL**

July 8, 2026

GEV IO LLC dba Nomad Internet
Jaden and Jessica Garza
Founders
Via email to counsel: oalaniz@reedsmith.com

RE: Addendum to Engagement Letter dated April 6, 2026 – Expansion of Services to Include Chief Restructuring Officer

Dear Jaden & Jessica:

This letter agreement ("**Addendum**") amends and supplements that certain engagement letter dated as of April 6, 2026 (the "**Original Engagement Letter**"), by and between HMP Advisory Holdings, LLC, dba Harney Partners ("**HP**") and GEV IO LLC dba Nomad Internet ("**Client**"), pursuant to which HP was retained to provide financial advisory services to Client in connection with its chapter 11 bankruptcy proceedings (Case No. 26-31546 (MVL), United States Bankruptcy Court for the Northern District of Texas).

The purpose of this Addendum is to expand the scope of HP's engagement to include the designation of Erik White, Managing Director of HP, as Chief Restructuring Officer ("**CRO**") for the Client and its debtor affiliate (collectively, the "**Debtors**"), effective as of June 9, 2026, subject to approval of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**").

1. **Expanded Scope of Services – Chief Restructuring Officer**

In addition to the financial advisory services described in the Original Engagement Letter (which shall continue in full force and effect), HP shall provide the following CRO services through Mr. Erik White (the "**CRO Services**"):

a. Consult with and advise the Debtors on business strategy and other key elements of the Debtors' business, with the Debtors' management and business personnel cooperating with and providing information to the CRO as reasonably requested in connection with restructuring efforts;
b. Manage due diligence requests and other items requested by various constituents as part of the restructuring process;
c. Supervise the preparation of and approve cash flow forecasts and related financial and business models;
d. Supervise the preparation of and approve schedules, statements, monthly operating reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the Bankruptcy Court;
e. Provide necessary testimony before the Bankruptcy Court on matters within the CRO's areas of expertise;
f. Negotiate with creditors, prospective purchasers, and other parties-in-interest;
g. Have decision-making authority over financial and restructuring matters of the Debtors, with the Debtors' management cooperating with and supporting the CRO in such matters;

h. Require the Debtors' management to provide the CRO with advance written notice of, and obtain the CRO's prior written consent before implementing, any operational decision that could reasonably be expected to have a material effect on the Debtors' cash flows, financial condition, or restructuring efforts, including, without limitation, decisions regarding (i) capital expenditures, (ii) new contracts or modifications to existing contracts, (iii) changes in pricing or service levels, (iv) workforce changes (including hiring, terminations, and material changes to compensation), and (v) any other operational matter that could materially impact the Debtors' financial position or restructuring;
i. Request and receive cooperation and assistance from the Debtors' employees, contractors, professionals, and other agents in performing his duties;
j. Execute all documents and take all other acts necessary to effectuate the financial restructuring of the Debtors;
k. Negotiate, propose, file, and seek confirmation of a plan of reorganization or liquidation on behalf of the Debtors, including any amendments or modifications thereto, subject to Bankruptcy Court approval;
l. Approve and authorize a sale of all or substantially all of the Debtors' assets or equity interests (including a sale of the company), whether pursuant to section 363 of the Bankruptcy Code or through a confirmed plan, subject to Bankruptcy Court approval and any applicable bidding procedures; and
m. Such other CRO services as may be agreed upon between HP and the Debtors.

The Debtors' management and business personnel shall cooperate fully with the CRO and provide the CRO with access to all information reasonably necessary for the CRO to carry out his duties during the course of these Chapter 11 Cases. Without limiting the foregoing, the Debtors' management shall not implement any material operational decision without first providing the CRO with reasonable advance written notice thereof and a meaningful opportunity to review and, if appropriate, object to such decision prior to its implementation.

2. **CRO Compensation**

In consideration of the CRO Services to be provided by Mr. White, and subject to approval of the Bankruptcy Court, the Debtors shall compensate Mr. White at a rate of $625.00 per hour, plus reimbursement of actual, reasonable, and documented out-of-pocket expenses.

Mr. White will maintain time records in one-tenth hour (0.10) increments setting forth, in a summary format, a reasonably detailed description of the services rendered and the amount of time spent on each date in rendering CRO Services on behalf of the Debtors.

All compensation and reimbursement of expenses for CRO Services shall be subject to the applicable provisions of the Bankruptcy Code (including sections 330 and 331), the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures or orders established by the Bankruptcy Court.

3. **Fiduciary Duties**

Mr. White, in his capacity as CRO, shall be subject to the same fiduciary duties and obligations applicable to other persons serving in such capacity.

4. **Relationship to Original Engagement Letter**

This Addendum supplements and amends the Original Engagement Letter solely with respect to the addition of the CRO Services and CRO Compensation described herein. All other

terms and conditions of the Original Engagement Letter, including without limitation the provisions relating to indemnification, limitation of liability, termination, confidentiality, governing law, and standard terms and conditions (**Exhibit A** thereto), shall remain in full force and effect and shall apply with equal force to the CRO Services provided hereunder, except to the extent expressly modified herein.

For the avoidance of doubt, Section 7 (No Fiduciary Relationship) of **Exhibit A** to the Original Engagement Letter shall not apply to Mr. White in his capacity as CRO, to the extent it is inconsistent with the fiduciary duties owed by the CRO as set forth in Section 3 of this Addendum.

**5. Court Approval**

This Addendum and the engagement of Mr. White as CRO are in all respects subject to the approval of the Bankruptcy Court. In the event of any inconsistency between the terms of this Addendum and any order of the Bankruptcy Court, the terms of the Court's order shall govern.

**6. Effective Date**

This Addendum shall be effective as of July 8, 2026, subject to Bankruptcy Court approval.

**7. Counterparts**

This Addendum may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.
--

If this Addendum accurately represents the agreement between the parties, please sign as indicated below and return a PDF copy to bpatterson@harneypartners.com.

Sincerely,

HARNEY PARTNERS

William R. Patterson
*Executive Vice President*

ACCEPTED AND AGREED AS TO FORM AND CONTENT

**GEV IO LLC dba Nomad Internet**

By: Signed by: Jessica Garza
E9A395DBD89B44A...

Jessica Garza, Founder

Date: 7/31/2026 | 12:47:35 PM PDT