United States Department of Justice
Office of the United States Trustee
1100 Commerce St. Room 976
Dallas, Texas 75242
(214) 767-1079
Meredyth A. Kippes,
for the United States Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GEV IO LLC, et al.** | § | **Case No. 26-31546-MVL-11** |
| | § | |
| | § | |
| **Debtors-in-Possession.** | § | **(Jointly Administered)** |

**United States Trustee's Objection to Debtors' Emergency Application for an Order Authorizing the Debtors to Designate Erik White as Chief Restructuring Officer for the Debtors, Effective as of July 9, 2026**
**(Docket Entry No. 116)**

**To the Michelle V. Larson,**
**United States Bankruptcy Judge:**

The United States Trustee for Region 6 objects to the Debtor's Emergency Application for an Order Authorizing the Debtors to Designate Erik White as Chief Restructuring Officer for the Debtors, Effective as of July 9, 2026 (the "CRO Application," Docket Entry No. 116) and respectfully shows as follows:

## Summary

The Debtors seek to expand the employment of their financial advisor, Harney Partners ("HP") to provide Erik White as the Debtors' Chief Restructuring Officer (the "CRO"). The United States Trustee objects to the Application because dual representation of the Debtors as both financial advisor and CRO represents an impermissible conflict of interest.

## **Background**

1. The Debtors herein filed their voluntary petitions in bankruptcy on April 8, 2026 (the "Petition Date").

2. No official committee of unsecured creditors has been appointed in this case.

**Employment of HP as Financial Advisor**

3. The Debtors filed an application to employ HP as their financial advisor on May 8, 2026 ("HP Employment Application," dkt. no. 68). The declaration of Erik White was attached to the HP Employment Application as Exhibit C.

4. The Debtors filed an amended application to employ HP as their financial advisor on May 11, 2026 (the "Amended HP Employment Application," dkt. no. 74). The declaration of Erik White was attached to the Amended HP Employment Application as Exhibit C.

5. The scope of HP's employment as financial advisor is set for in paragraph 16 of the Amended HP Employment Application:

> a. Assist the Debtors and their counsel with general matters related to a restructuring and contemplated chapter 11 proceeding, including but not limited to case strategy development, data gathering, and financial analysis, as needed;
>
> b. Assist the Debtors with bankruptcy required reporting, including Monthly Operating Reports (MOR);
>
> c. Assist the Debtors and their counsel, as requested, to complete Initial Debtor Interview questionnaire and related information, complete and file the required Schedules of Assets and Liabilities and Statement of Financial Affairs and prepare for § 341 Meeting of Creditors;
>
> d. Assist the Debtors and their counsel to obtain debtor-in-possession financing, if needed;
>
> e. Assist the Debtors to develop and maintain thirteen-week cash forecasts and any budget-to-actual reporting or other reporting as may be required by potential debtor-in-possession financing;
>
> f. Support the development of the Plan of Reorganization, including financial projections liquidation analysis, claims analysis and reconciliation, and other analysis, as needed; and
>
> g. Other services as may be agreed upon between HP and the Debtors.

6. After discussions with the United States Trustee, the Debtors file a supplemental declaration of Erik White in support of the Amended HP Employment Application (the "Supplemental White Declaration," dkt. no. 93, and together with the declarations attached to the HP Employment Application and the Amended HP Employment Application, the "White FA Declarations").

7. The Court entered an order approving the employment of HP as the Debtors' financial advisor on June 18, 2026 (the "HP FA Order," dkt. no. 101).

8. The Debtors filed a first interim fee application for HP on August 20, 2026 (the "HP Fee Application," dkt. no. 125). Erik White billed $56,030.00 for 86.20 hours at an hourly rate of $650.00 for the period of April 8, 2026 through July 31, 2026.

**The CRO Application**

9. On August 6, 2026, the Debtors filed the CRO Application seeking an order of the Court approving the appointment of Erik White as the Debtors' CRO effective as of July 9, 2026.

10. The scope of Mr. White's proposed services as CRO are described in paragraph 7 of the CRO Application as follows:

a. Consult with and advise the Debtors on business strategy and other key elements of the Debtors' business, with the Debtors' management and business personnel cooperating with and providing information to the CRO as reasonably requested in connection with restructuring efforts;

b. Manage due diligence requests and other items requested by various constituents as part of the restructuring process;

c. Supervise the preparation of and approve the cash flow forecast and related financial and business models;

d. Supervise the preparation of and approve schedules, statements, monthly operating reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the United States Bankruptcy Court ("**Bankruptcy Court**");

e. Provide necessary testimony before the Bankruptcy Court on matters within the CRO's areas of expertise;

f. Negotiate with creditors, prospective purchasers, and other parties in interest;

g. Have decision-making authority over financial and restructuring matters of the Debtors, with the Debtors' management cooperating with and supporting the CRO in such matters;

h. Receive advance written notice of, and provide prior written consent before the Debtors' management implements, any operational decision that could reasonably be expected to have a material effect on the Debtors' cash flows, financial condition, or restructuring efforts, including, without limitation, decisions regarding capital expenditures, new contracts or contract modifications, changes in pricing or service levels, workforce changes, and any other operational matter that could materially impact the Debtors' financial position or restructuring;

i. Request and receive cooperation and assistance from the Debtors' employees, contractors, professionals, and other agents in performing his duties; and

j. Execute all documents and take all other acts necessary to effectuate the financial restructuring of the Debtors;

k. Negotiate, propose, file, and seek confirmation of a plan of reorganization or liquidation on behalf of the Debtors, including any amendments or modifications thereto, subject to Bankruptcy Court approval;

l. Approve and authorize a sale of all or substantially all of the Debtors' assets or equity interests (including a sale of the company), whether pursuant to section 363 of the Bankruptcy Code or through a confirmed plan, subject to Bankruptcy Court approval and any applicable bidding procedures;

m. Such other CRO services as may be agreed upon between HP and the Debtors.

11. The CRO Application attaches the declaration of Erik White (the "White CRO Declaration") in which Mr. White asserts that he is disinterested.

12. The White CRO Declaration paragraph 6 states that Mr. White's "designation as CRO supplements and expands HP's existing engagement as the financial advisor to the Debtors."

13. The proposed order attached to the CRO Application references approval of the CRO Application under section 327(a) and 328.

14. The proposed order attached to the CRO Application provides for section 330 review of the proposed CRO's compensation.

15. It is not clear whether Mr. White as CRO would file a separate fee application from any fee application filed by HP as financial advisor.

## Argument and Authority

### I. HP may not serve the dual roles of financial advisor and CRO.

#### A. What is a "professional"?

16. Section 327(a) of the Bankruptcy Code provides that a trustee or a debtor-in-possession may, with court approval "employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

17. "Other than the occupations enumerated in section 327, the statute is silent as to who is included in the catchall category 'other professional persons.'" *In re Palm Coast, Matanza Shores, Ltd. P'ship*, 101 F.3d 253, 257 (2d Cir. 1996); see also 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").

18. A determination of whether an entity is a "professional person" is made on a case by case basis. *In re Madison Mgmt. Group, Inc.*, 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992). A professional person is one who plays an intimate or central role in the administration of the debtor's bankruptcy proceeding. *See In re Johns-Mansville Corp.*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) (stating that a professional within the meaning of section 327 is one intimately involved in the administration of the reorganization process, for example, someone who played a part in negotiating a plan, who is involved with disposing of or acquiring assets, or who interacts with creditors); *In re Palm Coast, Matanza Shores, Ltd. P'ship*, 101 F.3d at 257 ("[F]or the purpose of section 327(a), 'professional person' is limited to persons in those occupations which play a central

role in the administration of a debtor proceeding.") (quoting *In re Seatrain Lines*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

19. Courts examine the following six factors when determining whether an entity constitutes a "professional person":

a. Whether the entity controls, manages, administers, invests, purchases or sell assets that are significant to the debtor's reorganization;

b. Whether the entity is involved in negotiating the terms of a plan of reorganization;

c. Whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d. Whether the entity is given discretion or autonomy to exercise its professional judgment in some part of the administration of the debtor's estate;

e. The extent of the entity's involvement in the administration of the debtor's estate; and

f. Whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the terms.

*In re First Merchants Acceptance Corp.*, ("First Merchants"), 1997 WL 873551, at *2-4 (D. Del. Dec. 15, 1997) (finding that a business consultant who assists the debtor with its loan service operations was a professional because he will manage the debtor's receivables, a primary estate asset, his employment requires specialized skill or knowledge).

20. "Generally, financial advisors, workout specialists and consultants are, for the purpose of section 327 of the Bankruptcy Code, 'professionals.'" *In re Madison Mgmt. Group, Inc.*, 137 B.R. at 283. "The bankruptcy court should consider the substance of the person's employment over the form in determining whether the person is a professional for the purposes of section 327 of the Bankruptcy Code." *Id.*

21. Indeed, in many cases before this Court, Debtors have sought the employment of their financial advisors under section 327 and the employment of their CROs, each a different entity from the financial advisors, under section 363. *See, e.g.*, *In re CHC Group, Ltd.*, Case No. 16-31854-BJH-11 (dkt. nos. 124, 125, and 128); *In re ADPT DFW Holdings, LLC*, Case No. 17-31432-SGJ-11 (dkt. nos. 86 and 104); *In re 4 West Holdings, Inc.*, Case No. 18-30777-HDH-11 (dkt. nos. 132 and 135).

22. Under these definitions, HP, as financial advisor, is a professional.

**B. <u>Merging the roles of financial advisor and CRO creates a conflict and destroys disinterestedness.</u>**

23. Permitting HP and Mr. White to wear two hats in this case – one as financial advisor and one as CRO – would circumvent the application of 11 U.S.C. § 327(a) to HP's employment as a financial advisor.

24. The exercise of the bankruptcy court's inherent powers under section 105(a) "may not contravene specific statutory provisions." *Law v. Siegel*, 134 S.Ct. 1188, 1194 (2014). Section 105(a) is not a "roving commission to do equity." *In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995). "[W]hatever equitable powers [bankruptcy courts have] must and can only be exercised within the confines of the Bankruptcy Code." *Nw. Bank Worthington, v. Ahlers*, 485 U.S. 197, 206 (1988). The Supreme Court noted in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2071 (2012) ("*RadLAX*") that "it is a commonplace statutory construction that the specific governs the general," (citations omitted), and that it is "particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions."

25. Section 327(a) directly establishes the criteria for the employment of professionals, such as financial advisors, on behalf of the bankruptcy estate. Professionals employed under

section 327(a) may not "hold or represent an interest adverse to the estate" and must be "disinterested persons." 11 U.S.C. § 327(a). The debtors' professional carries the burden of proof to establish (a) that the firm is "disinterested" and (b) that the firm does not represent an interest adverse to the estate. 11 U.S.C. §327(a); *In re Big Mac Marine, Inc.*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005)(citations omitted)(addressing burden of proof for employment under § 327(a)). The Fifth Circuit requires courts evaluating a conflict to conduct a "painstaking analysis of the facts and precise application of precedent." *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1256 (5th Cir. 1986) (citation omitted) (remanding for additional findings and possible re-opening of evidence regarding special counsel's dual representation of director and debtor); *see also Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),* 936 F.2d 814, 819 (5th Cir. 1991) (referring to findings of fact).

26. Professionals employed under section 327(a) are officers of the court and fiduciaries. *Consolidated Bancshares*, 785 F.2d at 1256 n. 7. They can only serve one master. *Id.* Accordingly, the standards for employment "are strict," and the slightest personal interest may disqualify a candidate because bankruptcy professionals need a "high degree of impartiality and detached judgment." *Consolidated Bancshares*, 785 F.2d 1249, 1256 n. 6 (citing *In re Cropper Co.*, 25 B.R. 625, 629 (Bankr. M.D. Ga. 1983) and quoting *In re Philadelphia Athletic Club*, *Inc.*, 20 B.R. 328, 334 (E.D. Pa. 1982) (quoting 1 *Collier on Bankruptcy Manual* §101.13 (1981)).

27. Accordingly, the very fact of Mr. White's proposed position as CRO with management duties, means that he and HP have an unresolvable conflict of interest as financial advisor because of Mr. White's status as an officer of the Debtors. The substance of the CRO Application is that HP (and Mr. White), a professional whose employment as a financial advisor is reviewed under section 327(a), seeks to do what they cannot not do under section 327 – play

two roles in this bankruptcy case by serving both as an officer of the Debtors (the CRO) and as a professional for the estate (financial advisor).

28. Additionally, as CRO, Mr. White will be directing actions of the Debtors' professionals, including, presumably, his own firm, HP. He may make decisions to hire or fire professionals and may review and approve fee applications of professionals, including, again, presumably, his own firm, HP, that employs him and pays him directly. Thus, the tension between wearing the financial advisor hat and the CRO hat becomes clear.

29. The Court should not countenance the dual employment of HP and Mr. White in contravention of the disinterestedness requirements of section 327(a) and should deny the CRO Application seeking to expand HP's role as financial advisor to provide Mr. White as CRO.

## II. <u>In the event the Court determines to approve the CRO Application, it is unclear how HP and Mr. White will bill their time.</u>

30. The CRO Application seeks to employ Mr. White as CRO retroactively to July 9, 2026. Simultaneously, the Debtors seek approval of the HP Fee Application through July 31, 2026. A review of the fee statements attached to the HP Fee Application reflects that Mr. White billed the following time for a total of $12,415.00 in fees after July 9, 2026:

| | | | | | |
|---|---|---|---|---|---|
| Business Operations | EW | 7/16/2026 | 1.8 | $1,170.00 | correspondence re: cash budget; update cash actuals and forecast |
| Business Operations | EW | 7/19/2026 | 0.4 | $260.00 | update cash actuals; correspondence re: J&J lease |
| Business Operations | EW | 7/25/2026 | 0.6 | $390.00 | update cash actuals for the week |
| Business Operations | EW | 7/28/2026 | 0.5 | $325.00 | correspondence with Ironclad re: accounting entries |
| Business Operations | EW | 7/31/2026 | 1.0 | $650.00 | update cash actuals for the week; refine forecast |
| Case Administration | EW | 7/14/2026 | 1.0 | $650.00 | call with client and counsel |
| Case Administration | EW | 7/23/2026 | 0.6 | $390.00 | review updated CRO motion, provide comments to counsel |
| Reporting & Analysis | EW | 7/18/2026 | 1.2 | $780.00 | analysis for and completion of June MOR |
| Reporting & Analysis | EW | 7/20/2026 | 0.4 | $260.00 | finalize MORs |

| | | | | | |
|---|---|---|---|---|---|
| Sale Process | EW | 7/20/2026 | 0.9 | $585.00 | call with GGC and client re: operations (partial) (.9) |
| Sale Process | EW | 7/21/2026 | 3.4 | $2,210.00 | refine analysis of Verizon claim and historical invoices; draft email to client (1.8); prepare for and attend call with Ironclad re: A/R accounting (0.6); review and reconcile claims register, send update to counsel (0.6); call with client and Reed Smith re: next steps and open items (0.4) |
| Sale Process | EW | 7/21/2026 | 1.0 | $650.00 | review data room contents |
| Sale Process | EW | 7/23/2026 | 1.5 | $975.00 | call with J. Savage re: marketing effort (1.5) |
| Sale Process | EW | 7/24/2026 | 1.5 | $975.00 | draft projections for GCP |
| Sale Process | EW | 7/28/2026 | 1.3 | $845.00 | call with J. Savage; develop adjusted EBITDA schedule |
| Sale Process | EW | 7/29/2026 | 0.5 | $325.00 | call with T. Janak and GCP (0.5) |
| Sale Process | EW | 7/30/2026 | 1.5 | $975.00 | review draft of CIM, teaser and bid procedures motion (1.1); calls with J. Savage (0.3) and T. Janak (0.1) |

31. It is not clear whether any of these fees relate to Mr. White's functioning as the CRO from July 9, 2026 forward. To the extent that the Court approves the CRO Application, the Court should require that HP and the CRO maintain separate time records and ensure that the estate is not double billed for Mr. White's time as financial advisor and his time as CRO. *Cf., Arens v. Broughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995) (observing that courts have broad discretion when reviewing fees).

32. Under a section 330 review of fees and expenses, Courts consider various factors relating to "the nature, the extent, and the value of such services, taking into account all relevant factors." Such factors, while not statutorily applicable to a section 363 retention, would be equally useful in evaluating whether fees paid under such a retention are reasonable. The Court should retain its authority and flexibility to review the proposed CRO's fees prior to final approval. *Cf., In re Mirant Corp.*, 354 B.R. 113, 128-29 (Bankr. N.D. Tex. 2006).

33. Similarly, because this Court's Standing Order Concerning Guidelines for Compensation and Expense Reimbursement of Professionals, for Early Disposition of Assets in Chapter 11 Cases, and for Motions and Orders Pertaining to Use of Cash Collateral and Post-Petition Financing, Standing Order 2000-7, and the United States Trustee fee guidelines set forth a baseline standard for reasonable fees, the Applicants' expense reimbursement requests should comply with those standards.

Wherefore, the United States Trustee requests that the Court enter an order denying the CRO Application and granting to the United States Trustee such other and further relief as is just and proper.

DATED: August 25, 2026

Respectfully submitted,
Lisa L. Lambert

UNITED STATES TRUSTEE

*_/s/ Meredyth A. Kippes_*
Meredyth A. Kippes
Trial Attorney
Texas State Bar No. 24007882
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-1079
meredyth.kippes@usdoj.gov

**Certificate of Service**

I certify that copies of the foregoing document on August 25, 2026 via ECF to those parties requesting service via ECF in this case.

*_/s/ Meredyth A. Kippes_*
Meredyth A. Kippes