CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 9, 2026**

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **GEV IO LLC, *et al.*,** | § | **Case No. 26-31546 (MVL)** |
| **Debtors.[1]** | § | **(Jointly Administered)** |

**ORDER APPROVING DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO DESIGNATE ERIK WHITE AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, EFFECTIVE AS OF JULY 9, 2026 AND (II) TERMINATING HMP ADVISORY HOLDINGS, LLC DBA HARNEY PARTNERS AS OF JULY 9, 2026**

Upon the application (the "**Application**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of an order (this "**Order**") and the Declaration of Erik White (the "**White Declaration**") submitted in support of the Application, the Court hereby finds that based upon the representations made in the Application and White Declaration: (i) the CRO does

[1] The Debtors in these Chapter 11 Cases and the last four digits of each of their federal identification numbers are GEV IO LLC (9888) and Everywhere Internet, LLC (4237). The location of the Debtors' corporate headquarters and the Debtors' service address is 30665 U.S. Hwy 281 N. Bulverde, Texas 78163.

[2] Capitalized terms used herein but undefined have the meaning provided in the Application.

not represent any interests adverse to the Debtors' estates or their creditors with respect to the matter upon which he is to be engaged; (ii) the CRO is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code, and as provided and disclosed in the Application and the White Declaration; (iii) the employment of the CRO is necessary and is in the best interests of the Debtors' estate; and (iv) the Application should be GRANTED. It is therefore hereby **ORDERED** that:

1. The Application is granted as set forth herein.

2. The Debtors are authorized to retain and employ Erik White as the Debtors' CRO, effective as of July 9, 2026 subject to the concurrent termination of Harney Partners and Erik White as of July 9, 2026. For the avoidance of doubt, Erik White is expressly authorized to act as CRO for the Debtors, which includes managing the Debtors' business postpetition as of July 9, 2026 and overseeing the sale process through this chapter 11 case.

3. HMP Advisory Holdings, LLC *dba* Harney Partners is terminated as financial advisor to the Debtors as of July 9, 2026.

4. The terms of the Amended Engagement Letter, including, without limitation, the compensation provisions and the indemnification provisions, as modified by this Order, are reasonable terms and conditions of employment and are hereby approved as set forth herein; *provided, however*, that nothing in this Order shall constitute any findings regarding, or the approval or any determination with respect to, the reasonableness of compensation sought in any fee applications. Notwithstanding the foregoing, the Debtors' indemnification obligations to Erik White shall be limited to claims arising pursuant to Services provided by Erik White to the Debtors on or after July 9, 2026.

5. Notwithstanding the terms of the Amended Engagement Letter, in accordance with sections 327(a) and 328 of the Bankruptcy Code, the Debtors are authorized to designate Mr. Erik

White as Chief Restructuring Officer for the Debtors, effective as of July 9, 2026, in accordance with the terms and conditions set forth in the Amended Engagement Letter, as modified by this Order.

6. The CRO shall provide the Debtors with the following services:

a. Consult with and advise the Debtors on business strategy and other key elements of the Debtors' business, with the Debtors' management and business personnel cooperating with and providing information to the CRO as reasonably requested in connection with restructuring efforts;

b. Manage due diligence requests and other items requested by various constituents as part of the restructuring process;

c. Supervise the preparation of and approve cash flow forecast and related financial and business models;

d. Supervise the preparation of and approve schedules, statements, monthly operating reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the United States Bankruptcy Court;

e. Provide necessary testimony before the Bankruptcy Court on matters within CRO's areas of expertise;

f. Negotiate with creditors, prospective purchasers, and other parties-in-interests;

g. Have decision-making authority over financial and restructuring matters of the Debtors, with the Debtors' management cooperating with and supporting the CRO in such matters;

h. Receive advance written notice of, and provide prior written consent before the Debtors' management implements, any operational decision that could reasonably be expected to have a material effect on the Debtors' cash flows, financial condition, or restructuring efforts, including, without limitation, decisions regarding capital expenditures, new contracts or contract modifications, changes in pricing or service levels, workforce changes, and any other operational matter that could materially impact the Debtors' financial position or restructuring;

i. Direct the Debtors' employees, contractors, professionals, and other agents to assist the CRO in performing his duties; and

j. Execute all documents and take all other acts necessary to effectuate restructuring of the Debtors' business operations;

k. Negotiate, propose, file, and seek confirmation of a plan of reorganization or liquidation on behalf of the Debtors, including any amendments or modifications thereto, subject to Bankruptcy Court approval and;

l. Approve and authorize a sale of all or substantially all of the Debtors' assets or equity interests (including a sale of the company), whether pursuant to section 363 of the Bankruptcy Code or through a confirmed plan, subject to Bankruptcy Court approval and any applicable bidding procedures;

7. Notwithstanding the terms of the Amended Engagement Letter, the CRO shall not be paid a retainer outside the retainer already paid to HMP Advisory Holdings, LLC d/b/a Harney Partners as Financial Advisor ("**HP**"). The CRO shall file fee applications for interim and final allowance of hourly compensation and reimbursement of expenses incurred in connection with the professional services performed for the Debtors in the Chapter 11 Cases in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, Bankruptcy Local Rules, the U.S. Trustee Guidelines, and any applicable orders and procedures of this Court. For billing purposes, the CRO shall keep his time in one tenth (1/10) hour increments. The U.S. Trustee reserves the right to review and object to any and all such requests, and the Court shall review final fee applications for reasonableness under applicable law.

8. If, before the earlier of(i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the chapter 11 case, Erik White believes that he is entitled to the payment of any amounts by the Debtors on account of the Indemnification Provisions, Erik White must file an application before the Court and the Debtors may not pay such amounts before the entry of an order by the Court approving payment; *provided, however*, that for the avoidance of doubt, this Paragraph 7 is intended only to specify the period of time under which this Court shall have jurisdiction over any request under the Indemnification Provisions, and not a provision limiting the duration of the Debtors' obligation to indemnify Erik White or any other indemnified party.

9. Approval of any motion for appointment of a chief restructuring officer in which certain hourly rates and compensation terms are stated is not an agreement by the Court to allow fees at the requested hourly rates or compensation terms and is not a preapproval of compensation pursuant to 11 U.S.C. § 330(a). Final compensation, awarded only after notice and opportunity for a hearing, may be more or less than the requested hourly rates and compensation terms based on application of the above-mentioned factors in granting approval by court order.

10. In the event that, during the pendency of the Chapter 11 Cases, the CRO seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in the CRO's fee applications and such invoices and time records shall be in compliance with the Bankruptcy Local Rules, and shall be subject to approval of the Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; provided, however, that the CRO shall not seek reimbursement from the Debtors' estate for any fees incurred in defending any of his fee applications in the Chapter 11 Cases.

11. Notwithstanding anything to the contrary in the Application, the Amended Engagement Letter, or the White Declaration:

i. In the event the Debtors seek to have the CRO assume executive officer positions that are different than the position(s) disclosed in the Application or Amended Engagement Letter, or to materially change the terms of the engagement by either: (i) materially modifying the functions of the CRO, (ii) adding executive officers, or (iii) altering or expanding the scope of the Engagement Letter, as modified by this Order, a motion to modify the retention shall be filed with the Court;

ii. The CRO and his affiliates shall not act in any other capacity except as described in the Application and the Amended Engagement Letter in connection with the Chapter 11 Cases, including, without limitation as an investor or asset purchaser;

iii. For a period of three (3) years after the conclusion of the engagement, the CRO shall not make any investments in the Debtors or the Reorganized Debtors, as applicable; and

iv. No other principal, employee or independent contractor of the CRO's firm and its affiliates shall serve as a director of the Debtors during the pendency of the Chapter 11 Cases;

v. The CRO shall be subject to the same fiduciary duties and obligations applicable to other persons serving in such capacity.

vi. The Debtors are permitted to indemnify the CRO on the same terms as provided to other officers and directors of the Debtors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' directors and officers insurance policies, if any, except to the extent a claim or expense is judicially determined to have arisen from gross negligence, willful misconduct, bad faith, fraud, breach of fiduciary duty, if any, or self-dealing.

12. The following indemnification procedures are approved during the pendency of the Chapter 11 Cases:

i. subject to the limitations in subparagraph (iii) below, the CRO shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Amended Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

ii. The Debtors shall have no obligation to indemnify the CRO, or provide contribution or reimbursement to the CRO, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the CRO's gross negligence, willful misconduct, fraud, breach of fiduciary duty, if any, bad faith or self-dealing; or (ii) settled prior to a judicial determination as to the CRO's gross negligence, willful misconduct, breach of fiduciary duty, if any, or bad faith or self-dealing but determined by this Court, after notice and hearing to be a claim or expense for which the CRO should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order; and

iii. If, before the earlier of (i) the entry of an order confirming the plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, the CRO believes that he is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement

> Letter (as modified by this Order), including without limitation, the advancement of defense costs, the CRO must file an application with the Court, and the Debtors may not pay any such amounts to the CRO before the entry of an order by this Court approving the payment. This subparagraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the CRO for indemnification, contribution, and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the CRO. All parties in interest shall retain the right to object to any demand by the CRO for indemnification, contribution, and/or reimbursement.

13. Notwithstanding anything in the Application, or the White Declaration, to the contrary, the CRO shall seek reimbursement from the Debtors' estates for his expenses at actual cost.

14. The CRO shall provide ten (10) business days' notice to the Debtors, the U.S. Trustee, and any official committee appointed in these Chapter 11 Cases before implementing any periodic rate increases and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

15. The Debtors are permitted to submit to their insurance carriers fees and expenses of the CRO that are covered under insurance policies.

16. The CRO shall use reasonable efforts to avoid the duplication of services provided by any other professional retained by the Debtors in these Chapter 11 Cases.

17. The CRO shall make a reasonable effort to comply with the U.S. Trustee's requests for additional information and documentation.

18. Consistent with governing law, the CRO shall not receive payment from the Debtors' estate for any fees or costs arising from the defense of a filed objection to his fees or expenses in the above-captioned cases.

19. Notwithstanding any provisions to the contrary in the Amended Engagement Letter or any other document, the CRO expressly acknowledges that he owes certain fiduciary duties in these Chapter 11 Cases as an estate professional.

20. In the event the Amended Engagement Letter is terminated at any time during these Chapter 11 Cases, the Debtors shall provide notice to the Court and parties receiving notice of the CRO's retention as set forth in the Application.

21. Notwithstanding any provisions to the contrary in the Amended Engagement Letter or any other document, the Engagement Letter shall be governed solely by the Bankruptcy Code, applicable caselaw, and applicable nonbankruptcy law to the extent provided for in the Bankruptcy Code.

22. Notwithstanding any provisions to the contrary in the Amended Engagement Letter or any other document, any dispute concerning the CRO's retention in these Chapter 11 Cases, including any fee disputes between the CRO and the Debtors, shall be resolved exclusively and solely by and through the Court.

23. To the extent the Application, Amended Engagement Letter or White Declaration are inconsistent with this Order, the terms of this Order shall control.

24. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

25. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order in accordance with the Application.

26. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # End of Order # # #

Prepared by:

*/s/ Omar J. Alaniz*

**REED SMITH LLP**
Omar J. Alaniz (SBN 24040402)
Taylre C. Janak (SBN 24122751)
Haley B. Bray (SBN 24143584)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail: oalaniz@reedsmith.com
tjanak@reedsmith.com
hbray@reedsmith.com

-and-

**REED SMITH LLP**
Amalia Sax-Bolder (*admitted pro hac vice*)
1400 Wewatta St
Suite 350
Denver, CO 80202
Telephone: (303) 552-3800
Facsimile: (303) 552-3799
E-mail: asaxbolder@reedsmith.com

*Attorneys for the*
*Debtors and Debtors-in-Possession*